**Leesa PARISH, et al., Plaintiffs/Appellants,**

v.

**NOVUS EQUITIES COMPANY, et al., Defendants/Respondents.**

**No. ED 88842.**

Missouri Court of Appeals, Eastern District, Division One.

June 12, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied Sept. 25, 2007.

Patricia A. Wilcox, Weiss & Associates, P.C., St. Louis, MO, for appellant.

Martin J. Buckley, Adrian P. Sulser, David S. Davis, Buckley & Buckley, LLC, St. Louis, MO, for respondent.

Before CLIFFORD H. AHRENS, P.J., and MARY K. HOFF, J., and NANNETTE A. BAKER, J.

## OPINION

PER CURIAM.

Leesa Parish, Gerald Petersen, Kelly Luitjens, Robert S. Luitjens, Margaret E. Cooksey, the Charles and Margaret Cooksey Trust, Sharon L. Naumann, Reynold L. Green, Tracy M. Green, Jason McLaughlin, Mary McLaughlin, Jay Gardner, Tammy Gardner, Vernon Conway, Sandra Conway, Michael Ashcraft, Pamela Ashcraft, Marian Czyzewski, and Nancy Czyzewski (collectively referred to as the Homeowners) appeal from the trial court's judgment[1] granting the City of Sunset Hills' (the City) Motion to Dismiss Count

---

1. The trial court explicitly found no just reason for delay and certified its judgment as final for purposes of appeal, pursuant to Mo. R. Civ. Pro. 74.01(b). Although the Homeowners' second amended petition also named as defendants Novus Equities Company, Novus Development Company, Mainstreet at Sunset, L.L.C., Novus–Sunset, L.L.C., Jonathan Browne, and Lisa Browne (collectively referred to as the Novus Defendants), the trial court's judgment made no ruling on the Homeowners' claims against the Novus Defendants. The Homeowners' claims against the Novus Defendants are not directly involved in the issues presented to us in this appeal. Accordingly, we make no determinations regarding the Homeowners' pending claims against the Novus Defendants.

V and Count VII (Motion to Dismiss) of the Homeowners' second amended petition and granting the City's Motion for Summary Judgment with regard to Count VI (Motion for Summary Judgment) of the Homeowners' second amended petition. We affirm.

### Facts and Procedural History

In the spring of 2004, the City, a fourth class city, expressed interest in having a private organization redevelop an area within the City's boundaries known as the Sunset Manor neighborhood (Redevelopment Area) through the use of tax increment financing, pursuant to the Real Property Tax Increment Allocation Redevelopment Act, Section 99.800[2] *et seq.*, and in accordance with the City's already-prepared redevelopment plan. In April and May 2004, the City's board of aldermen solicited proposals from private developers. On June 30, 2004, Novus Development Company (Novus) submitted its proposal for the Redevelopment Area. On August 10, 2004, the City's board of aldermen adopted Ordinance No. 1564, which designated Novus as the "preferred developer" of the Redevelopment Area subject to certain conditions, including that the City and Novus reached a mutually "satisfactory redevelopment agreement."

In May 2005, the City's board of aldermen adopted Ordinance No. 1590, which memorialized the board of aldermen's determination that the Redevelopment Area was "blighted" under Section 99.810, approved Novus' redevelopment proposal and the City's redevelopment plan, and authorized the City to execute and enter into a redevelopment agreement with Novus. The City and Novus subsequently decided to modify their first agreement and, on July 12, 2005, the board of aldermen adopted Ordinance No. 1600, which authorized the City to enter into an amended redevelopment agreement (the Redevelopment Agreement) with Novus. The Redevelopment Agreement provided, *inter alia,* that Novus would provide the City with periodic written reports concerning the status of the redevelopment project, including financing commitments. The written reports were to be submitted to the City no later than the first day of each calendar quarter following the date the City and Novus executed the Redevelopment Agreement, July 12, 2005, and continuing until the completion of the project.

Meanwhile, between August 27, 2003, and July 1, 2005, Novus and each of the Homeowners had executed real estate contracts, under the terms of which the Homeowners agreed to sell and Novus agreed to purchase the Homeowners' homes in the Redevelopment Area for above-market value prices and to close each of the transactions on various dates between August 22, 2005, and September 1, 2005. However, after the City and Novus entered into the Redevelopment Agreement and as the closing dates for the real estate contracts approached, Novus notified the Homeowners that Novus had been unable to obtain financing and needed to reschedule the original closing dates to no later than September 30, 2005, to allow Novus time to restructure their financing. The Homeowners agreed to the change, and the Homeowners and representatives of Novus signed written amendments to the real estate contracts specifying the new closing dates. Ultimately, Novus was unable to obtain adequate financing, and the rescheduled closings never occurred.

The Homeowners subsequently filed their initial petition and their first amended petition against the City, Novus, Novus

2. All statutory citations are to RSMo 2000, unless otherwise indicated.

Equities Company, Mainstreet at Sunset, L.L.C., Novus–Sunset, L.L.C., Jonathan Browne, Lisa Browne, Westfield America, Inc., WEA Crestwood Plaza, L.L.C., and Missouri Residential I, L.L.C. Westfield America, Inc., WEA Crestwood Plaza, L.L.C., and Missouri Residential I, L.L.C., collectively filed a motion to dismiss the Homeowners' claims as to them, which the trial court granted. The City filed a separate motion to dismiss the Homeowners' sole claim as to it, which alleged that the City was negligent in failing to oversee Novus' financing of the redevelopment project and that the Homeowners sustained economic losses as a result. The trial court denied the City's motion to dismiss as being premature, finding that, although the City's conduct as alleged in the Homeowners' petition was "governmental in nature and entitled to limited sovereign immunity," the Homeowners should be allowed to conduct discovery on the issue of whether the City had waived sovereign immunity and, if so, to amend their petition.

During discovery, the City produced a certified copy of the City's insurance policy in effect at the time the Homeowners' alleged claims occurred. Consequently, the Homeowners filed their second amended petition re-alleging four of their previous claims against Novus and modifying their previous claim against the City and set out in three new counts, Counts V, VI, and VII. Counts V and VII alleged that the City had acted in its proprietary capacity when it entered into the Redevelopment Agreement with Novus and had been negligent in monitoring and confirming Novus' ability to obtain binding financial commitments for the redevelopment project pursuant to the terms of the Redevelopment Agreement, and, therefore, was liable for the Homeowners' losses stemming from Novus' failure to close on its real estate contracts with the Home-

owners. Count VI alleged that the City maintained insurance to cover the type of damages alleged in the Homeowners' second amended petition, i.e. economic losses, and such insurance constituted an absolute and complete waiver of all immunities against liability the City otherwise might have had.

In response, the City filed its Motion to Dismiss Counts V and VII and its Motion for Summary Judgment on Count VI. In its Motion to Dismiss, the City argued that Counts V and VII of the Homeowners' second amended petition failed to state a claim upon which relief could be granted because the trial court previously had found the City to be operating in its governmental capacity when it entered into the Redevelopment Agreement with Novus, which entitled the City to assert the affirmative defense of sovereign immunity with regard to those counts. The City further argued that the Homeowners had not specifically pleaded facts demonstrating their claim was within an exception to sovereign immunity. In its Motion for Summary Judgment, the City argued that it was entitled to judgment on Count VI of the Homeowners' second amended petition on the ground that it was not liable because: 1) the trial court previously had determined that the City's alleged conduct had been governmental in nature and that conduct was protected by limited sovereign immunity; 2) the City's insurance policy, which otherwise might have acted as a waiver of the City's immunity in this case, contained language indicating the policy was neither a waiver nor intended to act as a waiver of the City's immunity from the Homeowners' claims; and 3) the City's insurance policy did not include coverage for the type of damages Homeowners' allegedly sustained, i.e. economic losses.

In its judgment, with regard to the City's Motion to Dismiss, the trial court

agreed with the City's position that the Homeowners' second amended petition had failed to specifically plead facts demonstrating that Counts V and VII fell within an exception to the doctrine of sovereign immunity and found that allowing the Homeowners to amend Counts V and VII would not cure the inadequacy of those counts. With regard to the City's Motion for Summary Judgment, the trial court found that the City did not waive its limited sovereign immunity by procuring an insurance policy because the insurance policy contained a sovereign immunity disclaimer specifically disclaiming coverage for injuries or damages that would be barred by the doctrines of sovereign immunity or governmental immunity and thereby avoided waiving its governmental immunity.

### Point I

In their first point on appeal, the Homeowners claim the trial court erred in granting the City's motion to dismiss Counts V and VII of the Homeowners' second amended petition because the City was acting in its proprietary capacity when it participated in the Redevelopment Agreement with Novus and, therefore, was not protected from being sued for negligence by the doctrine of sovereign immunity. In the argument segment of their brief, the Homeowners specifically contend that, under the terms of the Redevelopment Agreement, the City assumed a duty to monitor and to confirm whether Novus had procured binding financial commitments for the redevelopment project, which was a duty owed to the Homeowners and not to the general public. The City was to perform its duty by requiring Novus to provide the City with mandatory periodic written reports demonstrating that Novus had procured binding financial commitments. The Homeowners further contend that they reasonably relied on the City to monitor and confirm the status of Novus' binding financial commitments and, because the City failed to exercise reasonable care in performing such monitoring, the Homeowners sustained economic losses when Novus failed to close the purchases of the Homeowners' properties.

We review the trial court's grant of a motion to dismiss by examining the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations in the light most favorable to the plaintiff to determine whether they invoke principles of substantive law. *Aiello v. St. Louis Cmty. Coll. Dist.*, 830 S.W.2d 556, 558 (Mo.App. E.D. 1992). Where the trial court does not specify its reasons for the dismissal, we may assume the trial court's action was based on one or more of the grounds asserted in the defendant's motion to dismiss. *Id.* We will affirm such a dismissal if any ground asserted in the defendant's motion is valid. *Id.*

Traditionally, only the state and its entities have been entitled to complete sovereign immunity from all tort liability. *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 447 (Mo. banc 2004). Sovereign immunity does not necessarily describe the immunity held by municipalities because municipalities, as distinguished from other governmental entities, exercise both governmental and proprietary functions; hence, the courts must look to the nature of the activity performed to determine in which capacity a municipality has acted in order to determine the scope of the municipality's immunity in a particular case. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 203 (Mo. banc 1996); *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992); *Honeywell v. Vill. of Lakeside*, 604 F.Supp. 932, 935 (W.D.Mo.1985). None-

theless, finding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity. *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo.App. E.D.2003).

A municipality is completely immune from liability arising from its performance of acts classified as governmental functions, unless a specific exception applies or the municipality specifically waives the immunity. Section 537.600.1(1) (municipalities have no immunity from suit when a plaintiff's injuries result from a public employee's negligent operation of a motor vehicle with the course of employment); Section 537.600.1(2) (municipalities have no immunity from suit when a plaintiff's injuries were caused by the dangerous condition of the municipality's property); *Junior Coll. Dist. of St. Louis*, 149 S.W.3d at 447; *Aiello*, 830 S.W.2d at 558. Generally, an act of a municipality performed for the common good of all is classified as a governmental function. *Aiello*, 830 S.W.2d at 558. Acts performed by the municipality as an agent of the state, including the establishment and operation of schools and hospitals, the creation of municipal fire departments, and the exercise of legislative or judicial powers, have been found to be governmental functions. *Id.; Junior Coll. Dist. of St. Louis*, 149 S.W.3d at 448; *State ex rel. Bd. of Tr. of the City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 359 (Mo. banc 1993); *Donahew v. City of Kansas City*, 136 Mo. 657, 38 S.W. 571, 573 (Mo.1897). Keeping the peace, enforcing laws and ordinances, and preserving the public health are just some of the duties within the province of a municipality as a governmental agency and upon which the municipality acts without liability. *Donahew*, 38 S.W. at 572. Additionally, a community college acting in its capacity as a political subdivision of the state may be found to be immune from suit where the community college allegedly was negligent in supervising its officials' or employees' performance of their duties in furtherance of the community college's broader governmental mandate. *See Aiello*, 830 S.W.2d at 559.

A municipality is not immune from liability for its negligence in performing proprietary functions. *Junior Coll. Dist. of St. Louis*, 149 S.W.3d at 447; *Aiello*, 830 S.W.2d at 558. An act of a municipality performed for the special benefit or profit of the municipal corporation, in that it provides local necessities and conveniences only to its own citizens, is classified as a proprietary function. *Junior Coll. Dist. of St. Louis*, 149 S.W.3d at 447; *Aiello*, 830 S.W.2d at 558. A municipality's distribution and sale of water to customers for their private use has been found to be a proprietary function. *Junior Coll. Dist. of St. Louis*, 149 S.W.3d at 448-49. A municipality's construction and maintenance of a sewer that is owned by the municipality and that is for the benefit of its residents also has been found to be a proprietary function. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.*, 589 S.W.2d 260, 267 (Mo. banc 1979).

Here, the trial court dismissed Counts V and VII of the Homeowners' second amended petition on the ground asserted in the City's Motion to Dismiss, i.e., that the Homeowners failed to state a cause of action because the City was acting in its governmental capacity when it entered into the Redevelopment Agreement with Novus and, therefore, was entitled to assert the affirmative defense of sovereign immunity and that the Homeowners' second amended petition failed to plead specific facts demonstrating their claims fell within an exception to sovereign immunity.

We agree. The act of which the Homeowners complained was the City's participation in the Redevelopment Agreement with Novus, which allegedly included a duty to monitor and to confirm the status of Novus' binding financial commitments. Accordingly, we find our reasoning in *Aiello* to be applicable in this case.

In *Aiello*, the plaintiff filed a petition claiming that a community college's board of trustees was negligent for failing to adequately supervise one of its administrators, who the plaintiff accused of misappropriating college funds by filing fraudulent expense reimbursement reports. *Aiello*, 830 S.W.2d at 557. The community college argued that the plaintiff's claim was precluded by the doctrine of sovereign immunity. *Id.* The trial court agreed and dismissed the plaintiff's petition with prejudice. *Id.* On appeal, we reasoned that the collective role of the community college acting as a political subdivision of the state, the board of trustees acting as agents of the community college, and the administrator was to carry out a broader governmental mandate of facilitating the higher education of the state's citizenry within the context of the community college as a publicly-funded institution. *Id.* at 558–59. The board of trustees' supervision of the administrator's performance of his duties, including his management of the community college's funds, was an act that allowed the community college to fulfill that broader governmental mandate. *Id.* at 559. Thus, the community college was entitled to sovereign immunity because the board of trustees' supervision of the administrator, whether or not the supervision was negligent, constituted a governmental function. *Id.* at 559.

Likewise, in this case, the City's participation in the Redevelopment Agreement, which the Homeowners claim included a duty to monitor and to confirm the status of Novus' binding financial commitments, constituted a governmental function. The City's role was to carry out the broader governmental mandate of protecting public health, safety, and welfare within the City's boundaries. The City's board of aldermen, as agents of the municipality, enacted legislation in the form of municipal ordinances authorizing the City to rehabilitate the blighted Redevelopment Area through its participation in the Redevelopment Agreement with Novus, which was an act that allowed the City to fulfill its broader governmental mandate.

Furthermore, assuming, *arguendo*, that the City had a duty to monitor and to confirm the status of Novus' binding financial commitments, under the terms of the Redevelopment Agreement such a duty would not have accrued until *after* Novus failed to complete the rescheduled closings with the Homeowners on September 30, 2005. The Redevelopment Agreement required Novus to provide the City with periodic written reports concerning the status of the redevelopment project, including financing commitments, and the written reports were to be submitted "no later than the first day of each calendar quarter" beginning with the first calendar quarter following the date the City and Novus executed the Redevelopment Agreement, which was July 12, 2005. Consequently, the first written report describing the status of Novus' financing commitments would not have been due until October 1, 2005, *after* the rescheduled closing date agreed to by the Homeowners.

We also note the record contains no indication that the Homeowners' claimed damages in the form of economic losses were attributable to the City's participation in the Redevelopment Agreement. Novus did not take possession of the Redevelopment Area, did not begin clearing the

Homeowners' properties, and did not perform any construction before September 30, 2005. Instead, the record reveals the alleged economic losses were due to the Homeowners' own acts of salvaging their properties and buying other properties in anticipation of construction of the redevelopment project. *See generally Hamer v. State Highway Comm'n.*, 304 S.W.2d 869, 874 (Mo.1957).

Accordingly, the City was entitled to sovereign immunity. The trial court did not err in granting the City's Motion to Dismiss Counts V and VII of the Homeowners' second amended petition. Point denied.

### Point II

In their second point, the Homeowners claim the trial court erred in granting the City's Motion for Summary Judgment as to Count VI of the Homeowners' second amended petition because the City waived sovereign immunity by procuring an insurance policy pursuant to Section 71.185.

The City counter argues that the trial court correctly determined that the City's procurement of liability insurance did not operate as a waiver of sovereign immunity because the insurance policy contained an endorsement (the Endorsement) preserving the City's sovereign immunity against claims not specifically covered by the policy. The City further argues that summary judgment was proper also because the Homeowners were unable to defeat the City's affirmative defense of sovereign immunity as they failed to specifically plead or produce any evidence establishing that their claim fell within an exception to the general rule of sovereign immunity or that the insurance policy covered the type of damages, i.e. economic loss, the Homeowners allegedly sustained from Novus' failure to close on the real estate contracts.

Summary judgment is proper where the pleadings and the discovery, exhibits, and affidavits on which the motion relies show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c). We view the record of the trial court's grant of a motion for summary judgment in the light most favorable to the party against whom judgment was entered, but our examination of the submitted record and the applicable law is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We take as true the facts set forth by affidavits or otherwise in support of the moving party's summary judgment motion unless contradicted by the non-moving party's response to the motion and accord the non-moving party the benefit of all reasonable inferences from the record. *Id.* Although summary judgment is often inappropriate in negligence cases, if there is no genuine dispute as to the material facts of the case and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's grant of summary judgment. *Bartel v. Cent. Mrkts., Inc.*, 896 S.W.2d 746, 748 (Mo.App. E.D.1995).

Before we begin our analysis, we note that the Homeowners filed only a memorandum in opposition to the City's Motion for Summary Judgment; they did not file a proper response to the City's Motion for Summary Judgment, pursuant to Rule 74.04(c)(2). Rule 74.04(c)(2) provides:

> Within 30 days after a motion for summary judgment is served, the adverse party shall serve a response on all parties. The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs.

A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.

Attached to the response shall be a copy of all discovery, exhibits or affidavits on which the response relies.

A response that does not comply with this Rule 74.01(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.

The response may also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner prescribed by Rule 74.01(c)(1).

The response may include a legal memorandum explaining the legal or factual reasons why summary judgment should not be granted.

When the party moving for summary judgment makes a prima facie showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, the non-moving party's only recourse is to show by affidavit, depositions, answers to interrogatories, or admissions on file that one or more of the material facts shown by the moving party to be beyond any genuine dispute is, in fact, genuinely disputed. *Ming v. Norfolk & W. Ry. Co.*, 947 S.W.2d 480, 482 (Mo.App. E.D.1997). The facts set forth by affidavit or otherwise in support of the moving party's motion are taken as true unless contradicted by the non-movant's response to the motion. *Id.* However, the non-moving party's failure to respond properly to the motion for summary judgment does not mean that sum-

mary judgment should be automatically granted in favor of the moving party. *Id.* at 483. Even if the facts as alleged by the moving party are not in dispute, those facts still must establish that he is entitled to judgment as a matter of law. *Id.* at 483; *Cashon v. Allstate Ins. Co.*, 190 S.W.3d 573, 579, n. 1 (Mo.App. E.D.2006).

Here, the City filed its Motion for Summary Judgment along with a supporting statement of facts and a memorandum of law. The Homeowners, however, did not comply with Rule 74.04(c)(2) by admitting or denying in corresponding numbered paragraphs each of the numbered factual statements in the City's Motion for Summary Judgment; accordingly, we take as true all of the facts set forth in support of the City's Motion for Summary Judgment. *Ming*, 947 S.W.2d at 482. Although we still must determine whether the City's Motion for Summary Judgment established that the Endorsement preserved the City's sovereign immunity and that the City is, therefore, entitled to summary judgment as a matter of law, we believe it would have been better practice for the Homeowners to file a response complying with Rule 74.04(c)(2) and stating whether the Homeowners did or did not dispute the facts presented in the City's Motion for Summary Judgment.

Under Missouri law, a municipal corporation is entitled to sovereign immunity from tort claims arising out of its performance of governmental functions unless: 1) the claimed injuries arose from an automobile accident in which public employees are involved; 2) the claimed injuries arose from the existence of a dangerous condition on public property; or 3) under certain circumstances, the municipal corporation has waived sovereign immunity by purchasing liability insurance. Section 71.185, Section 537.600, Section 537.610. Where the State or one of its

political subdivisions has procured insurance for tort claims, sovereign immunity is waived only to the maximum amount of coverage provided by the policy and only for the types of claims covered by the policy. Section 537.610.1; *Kunzie v. City of Olivette,* 184 S.W.3d 570, 574 (Mo. banc 2006). Likewise, a municipality may carry liability insurance to cover claims or causes of action for property damages or personal injuries caused while in the exercise of government functions, but it is liable for those damages or injuries only to the extent of the insurance so carried. Section 71.185.1. Section 537.610 provides an independent basis for waiving sovereign immunity that is cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy, and we will construe narrowly any such waiver of sovereign immunity. *Investors Title Co., Inc. v. Hammonds,* 217 S.W.3d 288, 300 (Mo. banc 2007); *Casey v. Chung,* 989 S.W.2d 592, 593 (Mo.App. E.D. 1998). Consequently, the plaintiff bears the burden of demonstrating the existence of the insurance and that it covered his particular claim. *Hummel,* 114 S.W.3d at 284. However, a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity. *Langley v. Curators of Univ. of Missouri,* 73 S.W.3d 808, 811 (Mo.App. W.D.2002).

■ In this case, the Endorsement provided, in pertinent part:

The following is added to the What This Agreement Covers section of each liability insuring agreement in your policy. This change limits coverage.

We'll apply this agreement to the tort liability of any protected person only if the protected person isn't immune from such liability under Missouri law.

. . .

Your purchase of this policy isn't a waiver under:

Missouri Revised Statute Section 537.610 or any of its amendments; or Missouri Revised Statute Section 71.185 or any of its amendments;

of sovereign or governmental immunity of any protected person for tort liability. *Tort liability* means liability that would be imposed by law without any contract or agreement.

Clearly, the Endorsement explicitly stated that the City's purchase of the insurance policy was not a waiver of the City's sovereign immunity. Furthermore, taking as true the uncontested facts alleged in the City's Motion for Summary Judgment, the coverage provided by the policy extended only to claims and damages involving tangible property, not economic losses. Thus, the Homeowners' claims under Count VI, which were pecuniary in nature and not property damage within the meaning of the City's insurance policy, did not fall within the exception to the general rule of sovereign immunity allowing recovery for damages or injuries to the extent of the insurance so carried. Section 71.185.1; *St. Paul Fire & Marine Ins. Co. v. Lippincott,* 287 F.3d 703, 706 (8th Cir.2002). Consequently, the trial court correctly determined that the City could not be found liable for the Homeowners' claim contained in Count VI and was entitled to summary judgment as a matter of law. Point denied.

### Conclusion

The trial court did not err in granting the City's Motion to Dismiss or the City's Motion for Summary Judgment. The judgment of the trial court is affirmed.