Ronald D. GREGG, et al., Appellants,

v.

CITY OF KANSAS CITY, Missouri, et al., Respondents.

No. WD 68989.

Missouri Court of Appeals, Western District.

Oct. 28, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2008.

Application for Transfer Denied Jan. 27, 2009.

John G. Sommer, Independence, for appellant.

Douglas McMillan, Kansas City, Carolyn Gail Vasterling, Jefferson City, for respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

This appeal arises from a wrongful death action brought against the City of Kansas City and members of the Kansas City Board of Police Commissioners. The trial court determined that the claims were barred by virtue of sovereign immunity. On appeal, the plaintiffs argue that the claims against Kansas City are not barred, because Kansas City purchased liability insurance and because the City's actions at issue were proprietary in nature. The plaintiffs argue that the claim against the Board of Police Commissioners is not barred, because the Board is required to carry liability insurance and because the sovereign immunity was waived though its actions. The judgment is affirmed in part and reversed in part.

## Facts

On March 14, 2007, Ronald Gregg and other members of the family of Rhonda Wolf, deceased, (Plaintiffs) filed a petition for wrongful death against the City of Kansas City (the City) and the members of the Kansas City Board of Police Commissioners (the Board). The petition alleged the following: The City is a municipal corporation providing armed security at the Kansas City International Airport. Donald Thurman was an employee of the City and served as an armed security officer for the airport. As part of his employment, Thurman was provided and authorized to have, and did have, a handgun, which he was allowed to retain in his possession when he was not on duty as an airport security officer. The Board provides screening, training, and licensing related to the City's security employees.

In November 2002, Thurman used the handgun to shoot and kill Rhonda Wolf at her apartment in Kansas City.

Count I of the petition stated a claim of negligent entrustment against the City. Count II of the petition stated a claim of negligent hiring or retention against the City. Both Count I and Count II alleged that, in authorizing Thurman to possess a gun as part of his employment and in providing armed security at the airport, the City was performing acts proprietary in nature that were performed for the special benefit or profit of the City. The

Counts also alleged that the City carried liability insurance that insured against claims or causes of action for property damage or personal injuries, including death, caused while acting in the exercise of governmental functions. Count III of the petition stated a claim of negligent screening against the Board. It alleged that the Board carried liability insurance as to tort claims made against it, including claims involving the screening, training, and education of security personnel.

The City filed a motion to dismiss alleging that it was protected by sovereign immunity and that no insurance coverage existed that waived sovereign immunity. The Board filed a motion for summary judgment and suggestions in support, alleging that the Board carries no insurance policies that would cover the claims alleged by Plaintiffs. It asserted that it was protected by sovereign immunity. In response, Plaintiffs expressed the view that the Board did have insurance. Plaintiffs cited 17 CSR 10–2.020(6) and (7) for the proposition that the Board was required by law to maintain such insurance.

The court held a hearing on the City's motion to dismiss and the Board's motion for summary judgment. The court found that the claims asserted against the City were barred by sovereign immunity and that a waiver of immunity had not occurred; it entered judgment in favor of the City. The court further granted the Board's motion for summary judgment as it found there was no genuine issue of material fact and the Board was entitled to judgment as a matter of law.

### Standard of Review

The City's motion to dismiss asserted a failure of the pleadings to state a claim upon which relief can be granted. Attached to the motion were copies of two insurance policies along with an affidavit of Sherri Gaiser, averring that the attached insurance policies maintained by the City were the only potentially pertinent insurance policies in place at the time of Rhonda Wolf's death. The City asserted that the two policies clearly did not provide coverage relevant to Plaintiffs' claims. Rule 55.27 provides in pertinent part that if such a motion presents matters outside the pleadings and those matters are not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04." It further states that "[a]ll parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04."

Review of the summary judgment in favor of the Board is essentially *de* novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The summary judgment movant must demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 381. When such a *prima facie* showing is made, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." *Id. (quoting* former Rule 74.04(e)). "For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

### Review of the City's Motion to Dismiss

Plaintiffs stated in their response to the City's motion to dismiss that the motion was an attempt by the city to obtain, in

effect, a summary judgment. Plaintiffs at that time sought an opportunity to obtain and present any relevant evidence.

While the motion was pending, Plaintiffs deposed an employee of the Kansas City, Missouri, Police Department in charge of licensing private security in Kansas City. On July 9, 2007, Plaintiffs also served on the City interrogatories and requests for production of documents. On August 6, 2007, the City answered the interrogatories and requests for production of documents.

On August 10, 2007, by agreement of the parties, Plaintiffs noticed up a hearing on the pending motions. The court held a hearing on the City's motion to dismiss in September 2007.

Plaintiffs again stated that the City's motion to dismiss was an attempt to convert the motion into summary judgment, and plaintiffs did not express acquiescence in such conversion. The court never advised the Plaintiffs that it intended to treat the motion as one for summary judgment. Plaintiffs did not specifically seek additional time to gather evidence, but Plaintiffs also did not concede that the discovery was complete. While we suspect that the Plaintiffs knew that in fact there is no pertinent insurance, and while we thus suspect nothing meaningful would be accomplished by a remand, we are stuck with the fact that as to the City we are reviewing a ruling on a motion to dismiss, rather than on a motion for summary judgment. Thus, as to the City, we will review the judgment of dismissal to determine whether judgment could properly have been granted on the face of the petition, taking as true Plaintiff's factual assertions. With that in mind, we turn to the substantive legal issues.

### Immunity

Section 537.600 affords public entities sovereign immunity from tort actions. *Necker by Necker v. City of Bridgeton,* 938 S.W.2d 651, 654 (Mo.App.1997). It provides that a public entity's sovereign immunity for negligent acts and omissions is waived in certain situations. The first is for injuries resulting from a public entity operating a motor vehicle. The second is for injuries caused by the condition of a public entity's property.

Pursuant to section 537.610, "when a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased." *Fantasma v. Kansas City, Mo., Bd. of Police Comm'rs,* 913 S.W.2d 388, 391 (Mo. App.1996).

The City is a municipal corporation. "A municipal corporation is a 'public entity' within the meaning of section 537.600 and section 537.610." *State ex rel. City of Marston v. Mann,* 921 S.W.2d 100, 102 (Mo.App.1996). "The Board is not a municipality, but rather a legal subdivision of the state." *Fantasma,* 913 S.W.2d at 391. The Board "governs the Kansas City police force" and "sovereign immunity attaches to the operation and maintenance of a police force." *Id.* Thus, both the City and the Board are protected by sovereign immunity.

### Claims against the City

Section 71.185 provides that

[a]ny municipality engaged in the exercise of governmental functions may carry liability insurance and pay the premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions[.]

"[It] applies to claims against municipalities for personal injury or property damage while in the exercise of governmental functions and provides that municipalities 'shall be liable as in other cases of torts.' " *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 n. 4 (Mo. banc 2006). It has been said that section 71.185 "does not explicitly *waive* any particular immunity, whereas section 537.610 provides that '[s]overeign immunity . . . is waived' to the extent of insurance coverage." *Id.*

▮ "Sections 71.185 and 537.610 both permit a public entity to purchase tort liability insurance." *Brennan By and Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 436 (Mo.App.1997). Despite differences in language and the fact that section 71.185 applies to municipalities only and section 537.610 applies to all 'political subdivisions' of the State, the courts have reasoned that the purchase of liability insurance may function "as a waiver of sovereign immunity under either statute." *Id.* The purchase of liability insurance may waive sovereign immunity apart from the two exceptions set forth in section 537.600. *Id.* "Where the State or one of its political subdivisions has procured insurance for tort claims, sovereign immunity is waived only to the maximum amount of coverage provided by the policy and only for the types of claims covered by the policy." *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 245–46 (Mo.App.2007).

▮ The City is a municipal corporation. "Traditionally, only the state and its entities have been entitled to complete sovereign immunity from all tort liability." *Id.* at 241. Municipalities, in contrast, have not enjoyed complete sovereign immunity. *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 358 (Mo. banc 1992); *Parish*, 231 S.W.3d at 241. "A municipality is completely immune from

liability arising from its performance of acts classified as governmental functions, unless a specific exception applies or the municipality specifically waives the immunity." *Parish*, 231 S.W.3d at 242. Thus, the City may waive immunity for acts considered governmental function, such as acts designed to protect the public.

▮ A municipality has no immunity from liability for its negligence in performing proprietary functions. *Id.* "[C]ourts must look to the nature of the activity performed to determine in which capacity a municipality has acted in order to determine the scope of the municipality's immunity in a particular case." *Id.* at 241. "The statutes and amendments enacted by the legislature have modified the governmental/proprietary distinction to a certain extent. . . ." *Russell*, 843 S.W.2d at 358. "The common law governmental/proprietary test retains vitality only in suits against municipal corporations that do not involve the express waivers contained in section 537.600." *Id.* Thus, Plaintiffs here may have a cause of action if the City's actions here were proprietary, or the City waived immunity by the purchase of insurance.

### Waiver by Purchase of Insurance

▮ We look first to the issue of waiver because in their first point, Plaintiffs argue that the City waived its sovereign immunity by procuring liability insurance covering its damages. A municipality that carries liability insurance to cover claims or causes of action for property damages or personal injuries "is liable for those damages or injuries only to the extent of the insurance so carried." *Parish*, 231 S.W.3d at 246. "[T]he plaintiff bears the burden of demonstrating the existence of the insurance and that it covered his particular claim." *Id.* "[F]inding a municipality liable for torts is the exception to

the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." *Id.* at 242.

▪ Plaintiffs alleged in their petition that the City was covered by liability insurance. In its motion to dismiss, the City asserted that insurance coverage pertinent to Plaintiffs' claims did not exist. Thus, there was no waiver as to these claims, says the City. The City stated that there were arguably two policies to which Plaintiffs could be referring in its petition and that both policies fail to provide coverage for Plaintiffs' claims. The City then set forth the coverage provided by both policies. Attached to the motion were copies of the insurance policies and an affidavit from the City employee who maintains the files containing the City's insurance policies for the airport. The employee averred that the attached copies of the insurance policies were in effect as of the date of Ms. Wolf's death. We fail to understand why the City proceeded on a motion to dismiss, rather than a motion for summary judgment; but we take the case as it is presented.

While Plaintiffs have not asked for additional time to determine whether there is any other insurance, plaintiffs also were never told that the motion to dismiss would be treated as a motion for summary judgment. Therefore, the allegations of their petition must be taken as true for present purposes. Accordingly, the court erred in granting the motion to dismiss. We will need to remand for the purpose of allowing the court to determine whether there really is a factual dispute about the existence of appropriate insurance, and how to proceed if there is such a dispute.

### Providing Airport Security

In their second point, Plaintiffs argue that the City waived its sovereign immunity by its proprietary actions in operating an airport, hiring trained security guards, providing the guards with weapons, and allowing the guards to carry the weapons off airport premises without restriction. Plaintiffs argue that these acts were proprietary and are not protected by sovereign immunity. In their response to the City's motion to dismiss, Plaintiffs stated that owning and maintaining an airport are proprietary. This is a question of law, and no issue of fact appears here.

▪ "The distinction between governmental and proprietary duties is sometimes obscure." *Aiello v. St. Louis Cmty. Coll. Dist.*, 830 S.W.2d 556, 558 (Mo.App. 1992). "An act of a municipality performed for the special benefit or profit of the municipal corporation, in that it provides local necessities and conveniences only to its own citizens, is classified as a proprietary function." *Parish*, 231 S.W.3d at 242. "A municipality's distribution and sale of water to customers for their private use has been found to be a proprietary function." *Id.* A municipality's maintenance of a park would be another example of a proprietary function. *Teaney v. City of St. Joseph*, 520 S.W.2d 705 (Mo.App. 1975).

▪ "Generally, an act of a municipality performed for the common good of all is classified as a governmental function." *Parish*, 231 S.W.3d at 242. Airport security would seem to be one of those functions. It is a service which "is performed by the governmental unit as an agent of the state." *Aiello*, 830 S.W.2d at 558. "Acts performed by the municipality as an agent of the state, including the establishment and operation of schools and hospitals, the creation of municipal fire departments, and the exercise of legislative or judicial powers, have been found to be governmental

functions." *Parish*, 231 S.W.3d at 242. "Keeping the peace, enforcing laws and ordinances, and preserving the public health are just some of the duties within the province of a municipality as a governmental agency and upon which the municipality acts without liability." *Id.*; *see also State ex rel. City of Nevada v. Bickel*, No. WD69491, 2008 WL 4399465 (Mo.App. W.D. Sept. 30, 2008)

■■■■ The mere fact that a municipality's actions compete with private industry or result in a profit does not automatically render the actions proprietary. *Russell*, 843 S.W.2d at 359. Municipal actions may have a dual function. "It is undoubtedly true that a municipal corporation can exercise its dual functions, governmental and proprietary, through the same agents and to a certain extent by the same instrumentalities." *Theodoro v. City of Herculaneum*, 879 S.W.2d 755, 761 (Mo.App.1994) (*quoting Lober v. Kansas City*, 74 S.W.2d 815, 823 (Mo.1934)) (noting that a city may own and operate a water system for the dual purpose of supplying inhabitants water for revenue (a proprietary function) while also preventing fires and keeping the city sanitary and healthful (a governmental function)).

■■■ Plaintiffs argue strenuously that the City's actions with regard to Thurman were proprietary, because the acts of owning and operating an airport are proprietary. Plaintiffs point to cases that have recognized that the maintenance of airport property can be a proprietary function. *See Atcheson v. Braniff Int'l Airways*, 327 S.W.2d 112, 117 (Mo.1959) (decedent was killed by plane propellers due to the allegedly negligent design of the runway); *Behnke v. City of Moberly*, 243 S.W.2d 549, 553 (Mo.App.1951) (injury to airplane caused by airplane driving into trench concealed by snow in newly constructed parking area for airplanes). In contrast, Plaintiffs' claims in the case *sub judice* pertain to the provision of security at the airport.

■■■ While owning and operating an airport may, at least in some instances, be a proprietary function, airport security seems, notwithstanding the authorities on which Plaintiffs rely, to be prototypically a governmental function. It is akin to the act of policing. "Although the operation and supervision of a police department are acts involving discretion of public officials, they constitute the exercise of a governmental function...." *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 401 (Mo.App.1984). Plaintiffs dispute that the City employees were engaged in functioning as police officers, noting that the legislature removed the operation of the Kansas City Police Department from the City and created the Board of Police Commissioners, citing section 84.350. Plaintiffs, thus, wish to argue about the degree of the City's authorization to maintain what the City argues is essentially an airport police force of actual peace officers (as opposed to being something like a private security firm). We need not enter that debate because, regardless of the official powers and status of the City's security employees, when the City provides airport security it *is* engaged in a governmental activity. This is due to the *nature* of the activity itself, together with the fact that the City is a local governmental entity.

The conclusion that providing security at an airport is a governmental function is not only based in sound logic but is also consistent with the rulings of other jurisdictions. *See, e.g. Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 521 (Colo.Ct.App.1998) ("In our view, the operation of the airport with respect to such essential functions is not for the particular benefit of the citizens of

the municipality, but, rather, for the public good in general."); *City of Macon v. Powell,* 133 Ga.App. 907, 213 S.E.2d 63 (1975) (driver of airport security vehicle acting in governmental capacity although municipal airport was proprietary in some other respects). We conclude that the City's provision of security is a governmental function. The City is protected by sovereign immunity unless otherwise waived, such as by the provision of insurance.

### Plaintiffs' Claim against the Board

■ Unlike the City, which does not have immunity for proprietary actions, the Board enjoys sovereign immunity as long as it is not waived by statute. Plaintiffs argue that the Board's immunity should be considered waived, because the Board is supposed to be furnished with liability insurance as to Plaintiffs' claims. It further asserts that failure to have such insurance should not be a defense, because allowing such a defense would reward failure to comply with the law.[1]

■ We will affirm if the trial court reached the right result in the case, even though the court might have ruled on a basis different from the basis we apply in affirming. *Kehrs Mill Trails Assocs. v. Kingspointe Homeowner's Ass'n,* 251 S.W.3d 391, 396 (Mo.App.2008).

Plaintiffs' claim against the Board is a claim of negligent screening, although Plaintiffs do not use that label. Plaintiffs argue that the Board should not have issued a license to Thurman, because a more thorough background investigation would have shown that Thurman should not be licensed. The exercise of the Board's duty to investigate applicants and determine whether they qualify for a license requires the use of professional expertise, training, and judgment. The duty to exercise care in that regard is obviously a duty owed to the public at large. The petition, therefore, makes allegations that seem to give rise to the question of the applicability of the public duty doctrine.

■ Under the public duty doctrine, "a public employee is not liable to an individual for injuries resulting from a breach of duty the employee owes only to the general public." *Davis–Bey v. Mo. Dep't of Corr.,* 944 S.W.2d 294, 298 (Mo. App.1997). Similarly, the public entity employing the allegedly negligent employee also is shielded from liability. *See Heins Implement Co. v. Mo. Highway & Transp. Comm'n,* 859 S.W.2d 681, 694 (Mo. banc 1993). The public duty doctrine negates the duty element of the alleged tort. *See Christine H. v. Derby Liquor Store,* 703 S.W.2d 87, 89 (Mo.App.1985). A "public duty" is the "kind of duty owed to the public at large," and is the kind of duty that requires the public official to use discretion, including "professional expertise, training and judgment." *Davis–Bey,* 944 S.W.2d at 298.

■ It is not clear that the Board would be able to claim the protection of the public duty doctrine if Plaintiffs show that immunity was waived pursuant to section 537.600 or 537.610. However, Plaintiffs do not argue that there is a waiver under 537.600 based on the automobile exception or the condition of property exception. Also, Plaintiffs have conceded that the Board did not purchase insurance pursuant to section 537.610. Plaintiffs ar-

---

1. During oral arguments, Plaintiffs argued that the proprietary/governmental distinction should apply to the Board. It cited no authority for this proposition and acknowledged that the distinction applies only to municipali-

ties. Nonetheless, it argued the distinction should be extended to the Board in this case because the Board licenses City employees. Given that no legal support exists for this argument, it is not entertained.

gue, however, that the Board *should have been* protected by such insurance, and that the City or the individual City employee *should have purchased* such insurance pursuant to 17 CSR 10–2.020(6) and (7). Because those regulations seem to require that licensees purchase insurance and that the insurance so purchased also cover the Board as an additional insured, Plaintiffs suggest that the regulations constitute a *de facto* waiver.

Plaintiffs lack authority for their interesting argument. Section 537.610 *permits*, but does not require, a public entity to purchase liability insurance. The statute leaves the decision to the public entity. The *regulations* purport to require a security company to purchase insurance for its employees, with the Board named as an additional insured. 17 CSR 10–2.020(6). The City suggests that the regulatory intent was to require insurance for *private* companies, and that suggestion makes sense in light of the statutes, though it is not expressed in the regulation. In any event, Plaintiffs fail to explain how the regulations could force upon the Board an involuntary waiver of sovereign immunity without the actual purchase of insurance.

In view of the fact that the express statutory language of 537.610 must trump any contrary implication that we could make from the regulation, we see no basis by which Plaintiffs can overcome the fact that the Board *did not* purchase such insurance. Plaintiffs make no showing that the Board was instrumental in *causing the regulations to be issued* for the Board's protection such that the regulations can be said to constitute a waiver by the Board. And even if Plaintiffs had made such a showing, we could not ignore the undisputed fact that the Board in this instance did not require either the City or Donald Thurman to purchase liability insurance protecting the Board. Thus, Plaintiffs fail to show that the Board waived its immunity here.[2]

## Conclusion

The claims against the Board are barred. The claims against the City were not properly dismissed because Plaintiffs did not concede in the trial court that there is no pertinent insurance. The trial court, aware of the significance of the possible factual dispute in that regard, did not inform the parties it intended to approach the matter as a motion for summary judgment. Plaintiffs did not acquiesce in treating the motion as one for summary judgment. The City concedes that the matter is here on review of a motion to dismiss. Thus, though we are doubtful that, on remand, the Plaintiffs will be able to counter the City's assertions that there is no applicable insurance, we must give the Plaintiffs that opportunity. The judgment

---

**2.** It is not entirely clear to this writer that 537.610 is applicable to the Board, because 537.610 (allowing waiver by the purchase of insurance) applies to "political subdivisions" that choose to purchase insurance. Section 537.610 switches from the use of the term "public entities" (which is used in 537.600 in restoring sovereign immunity to public entities, subject to the two specified exceptions) to the use of the term "political subdivision" (in dealing with waiver by the purchase of insurance). While the Board is an arm of the State, and could be called a legal subdivision of the State, one wonders whether any court has actually *decided,* as opposed to assuming, that the Board is so constituted and empowered as to be held to be a "political" subdivision of the State. Counsel for the Board expressed the view that the Board *has* chosen to waive immunity to the extent of insurance purchased; thus the Board sees no issue, and these musings amount only to academic speculation. In any event, because of our determination that there was not shown to be a waiver by the purchase of insurance, any issue as to the applicability of 537.610 to the Board would be moot.

in favor of the city is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.