

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STATE OF MISSOURI, ex rel.    )
CITY OF KANSAS CITY,    )
MISSOURI,    )
             Relator,    )
v.    )    **WD82290**
   )
THE HONORABLE KEVIN D.    )    FILED: February 5, 2019
HARRELL, JUDGE FOR THE    )
16TH JUDICIAL CIRCUIT OF    )
MISSOURI,    )
             Respondent.    )

### Original Proceeding on Petition for Writ of Prohibition

### Before Writ Division: Alok Ahuja, P.J., and Gary D. Witt and Thomas N. Chapman, JJ.

The City of Kansas City filed an original petition for a writ of prohibition in this Court, seeking dismissal of a civil suit filed against it in the Circuit Court of Jackson County. In the underlying suit, plaintiff Clay Chastain contends that the City defamed him by placing him on a "watch list" at City Hall, which subjected him to enhanced security screening when he entered the building, and required that he be escorted by armed security personnel inside the building. The City argues that it is entitled to sovereign immunity against Chastain's defamation claim. We agree. We previously issued a preliminary writ of prohibition, which we now make permanent.

### Factual Background

For purposes of the City's motion to dismiss, we assume that the facts alleged in Chastain's Amended Petition are true, and we give him the benefit of all

reasonable inferences arising from those facts. *Jackson v. Barton*, 548 S.W.3d 263, 267 (Mo. banc 2018).

Chastain is a long-time community activist in Kansas City. He filed the underlying suit in the Circuit Court of Jackson County on March 2, 2018. Case No. 1816-CV05605.[1]

In his Amended Petition, Chastain alleges that the City placed him on a "watch list" at City Hall, which resulted in him being delayed and subjected to enhanced security screening upon entering City Hall, and required that he be escorted throughout City Hall by armed security guards. When Chastain initially protested being on the "watch list," he was told that the City considered him "possibly dangerous."

The Amended Petition alleges that, on June 11, 2017,[2] Chastain's placement on the "watch list" became widely publicized. On that date, a news reporter observed and filmed Chastain's interactions with security personnel when he entered City Hall, and Chastain being escorted by two armed security guards to the City Clerk's office to deliver an initiative petition. Chastain "became visibly upset and protested more vigorously than he had in the past." The reporter interviewed Chastain about his interaction with security personnel. According to the Amended Petition, an unnamed City employee verified to the reporter that Chastain had been placed on a "watch list" because the City deemed him to be dangerous. A story about the incident was broadcast or published by multiple news outlets.

---

[1]     Chastain made similar claims in an earlier case that was dismissed without prejudice for failure to prosecute. *Chastain v. City of Kansas City, Missouri*, Case No. 1716-CV11374.

[2]     In the Brief he filed on behalf of Respondent, Chastain states that this incident occurred on June 11, *2016*. Consistent with our standard of review, we rely on the date alleged in Chastain's Amended Petition.

2

On June 14, 2017, Chastain returned to City Hall to pick up his copies of the initiative petition, and was once again subjected to enhanced and intrusive security screening. Chastain protested to the head of security and the City's legal department about being on the "watch list," and threatened to sue the City if his name was not promptly removed. Chastain's name was removed from the "watch list" later that day.

The Amended Petition alleges that the City acted with malice in falsely accusing Chastain of being dangerous, and that the City placed him on the "watch list" as retribution for his political activities. The Amended Petition alleges that the City's actions caused Chastain emotional harm, and had the effect of "smear[ing], malign[ing] and defam[ing] Chastain's public reputation" and his reputation with City personnel. Chastain prays that the court award him $1 million in compensatory damages, and $2 million in punitive damages.

The Amended Petition asserts that the City is not entitled to sovereign immunity against Chastain's defamation claim because the City "controls and directs its security force," and the City, "acting through its security force on behalf of its citizens, is performing a proprietary function."

The City moved to dismiss Chastain's Amended Petition on sovereign immunity grounds. The City's motion argued, first, that running City Hall is a governmental function entitled to sovereign immunity. In the alternative, the City argued that, even if the operation of City Hall is deemed to be a proprietary function, the act of *providing security* to City Hall is a governmental function for which the City is immune from suit.

After the circuit court denied the City's motion to dismiss, the City filed its writ petition in this Court.

**Discussion**

"Prohibition is a discretionary writ that only issues to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extrajurisdictional power." *State ex rel. Church & Dwight Co., Inc. v. Collins*, 543 S.W.3d 22, 26 (Mo. banc 2018) (citation and quotation marks omitted).

If the City is immune from Chastain's suit, prohibition is an appropriate remedy. The Missouri Supreme Court has "repeatedly held that prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 331 (Mo. banc 2009) (citations and quotation marks omitted). "If a party cannot state facts sufficient to justify court action or relief, it is fundamentally unjust to force another to suffer the considerable expense and inconvenience of litigation. It is also a waste of judicial resources and taxpayer money." *Id.* In particular, "where it appears on the face of the pleadings that the defendant is immune from suit as a matter of law, prohibition is an appropriate remedy." *McCoy v. Martinez*, 480 S.W.3d 420, 423–24 (Mo. App. E.D. 2016) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444 (Mo. banc 1986)); *see also*, *e.g.*, *State ex rel. City of Grandview v. Grate*, 490 S.W.3d 368, 369 (Mo. banc 2016) ("Sovereign immunity is not a defense to suit but, rather, it is immunity from tort liability altogether, providing a basis for prohibition.").

Where it is applicable, the doctrine of sovereign immunity prevents a public entity from being sued without its consent. *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. banc 2016). Although Chastain's Amended Petition alleges that the City committed the intentional tort of defamation, "sovereign immunity shields municipalities from liability even from intentional torts." *Bennartz v. City of Columbia*, 300 S.W.3d 251, 261 (Mo. App.

4

W.D. 2009) (citing *Aiello v. St. Louis Community College Dist.*, 830 S.W.2d 556, 558 (Mo. App. E.D. 1992)).[3]

Sovereign immunity is not an affirmative defense; instead, when suing a public entity, the burden is on the plaintiff to plead facts with specificity that give rise to an exception to sovereign immunity. *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009) (citations omitted). "Accordingly, to state a cause of action sufficient to survive a motion to dismiss on the pleadings, the petition, when viewed in its most favorable light, must plead facts, which if taken as true, establish an exception to the rule of sovereign immunity." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 913 (Mo. App. W.D. 2012) (citation and quotation marks omitted).

Sovereign immunity does not apply to all of the activities of a municipal entity; instead, a court must determine whether the function the city was performing in a particular case was "governmental" or "proprietary."

> Under the common law, a municipality is not entitled to full sovereign immunity. Because municipalities operate as both political subdivisions of the state and independent corporations, they perform both governmental and non-governmental functions. And because sovereign immunity protects the state, as a sovereign, municipalities are cloaked with immunity only when acting as an arm of the state. Thus, unlike state entities which receive full sovereign immunity, municipalities are entitled to sovereign immunity only when engaged in governmental functions, but not proprietary functions. The distinction between the governmental and proprietary functions of municipalities was drawn by the courts in order to impose common law liability on municipal corporations for the negligence of their agents, servants or officers in the execution of *corporate* powers and duties.

---

[3]     *See also*, *e.g.*, *Mitchell v. Village of Edmundson*, 891 S.W.2d 848, 850 (Mo. App. E.D. 1995); *Balderree v. Beeman*, 837 S.W.2d 309, 317 (Mo. App. S.D. 1992) (applying sovereign immunity to a claim of slander against a regional planning commission), *overruled on other grounds by Amick v. Pattonville-Bridgeton Terr. Fire Protection Dist.*, 91 S.W.3d 603, 605 (Mo. banc 2002).

*Crouch v. City of Kansas City*, 444 S.W.3d 517, 521–22 (Mo. App. W.D. 2014) (citations and internal quotation marks omitted); *accord*, *City of Grandview*, 490 S.W.3d at 371.

We have recognized that "[t]he distinction between governmental functions and proprietary ones is often obscure . . . ." *Bennartz*, 300 S.W.3d at 259 (citing *Gregg v. City of Kansas City*, 272 S.W.3d 353, 361 (Mo. App. W.D. 2008). As a general matter, "governmental functions are those performed by the municipality as an agent of the state, meaning that they are for the benefit of the general public, or 'the common good of all.'" *Crouch*, 444 S.W.3d at 523 (citations and quotation marks omitted). "Keeping the peace, enforcing laws and ordinances, and preserving the public health are just some of the duties within the province of a municipality as a governmental agency and upon which the municipality acts without liability." *Gregg*, 272 S.W.3d at 361 (citations and internal quotation marks omitted). On the other hand, proprietary functions are those functions "performed for the special benefit or profit of the municipality acting as a corporate entity." *Junior College Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 447 (Mo. banc 2004) (citation and quotation marks omitted). "These functions often involve the provision of services or conveniences to a municipality's own citizens." *Bennartz*, 300 S.W.3d at 259 (citation omitted). For example, a municipality's sale and distribution of water to customers for private use and a municipality's maintenance of a park have been found to be proprietary functions. *Gregg*, 272 S.W.3d at 360.

In his Amended Petition, Chastain argues that the City was performing a proprietary function, not a governmental function, when it placed his name on the "watch list" at City Hall, and when its security personnel subjected him to enhanced screening, and required that he be escorted inside City Hall. In making this argument, Chastain focuses on the specific conduct underlying his defamation claim: the City's allegedly malicious, and unjustified, action of branding him as

6

"dangerous," and subjecting him to humiliating and harassing security measures, as retribution for his community activism and political activities. Chastain argues that the City's vindictive actions towards him were not performed for "'the common good of all.'" *Crouch*, 444 S.W.3d at 523.

Chastain's focus is too narrow. "In deciding whether a particular function is governmental or proprietary, a court must look to the nature of the activity performed, not the nature of the tort." *Crouch*, 444 S.W.3d at 523 (citations and internal quotation marks omitted). "[T]he particular defendant's conduct and the motives behind it are less important than the generic nature of the activity." *A.F. v. Hazelwood School Dist.*, 491 S.W.3d 628, 634 (Mo. App. E.D. 2016) (citation omitted); *see also Crouch*, 444 S.W.3d at 523. "The status of a function of a city does not vary from day to day with the whims of the particular people elected or appointed to municipal offices." *State ex rel. Bd. of Trustees v. Russell*, 843 S.W.2d 353, 359 (Mo. banc 1992).

Therefore, rather than focusing on the City's purportedly malicious and defamatory actions against Chastain, we look to "the generic nature of the activity" it was performing at the time of the alleged tort. The actions of which Chastain complains—identifying persons who may pose a security risk, and subjecting those persons to heightened screening and surveillance—are part of the security function at City Hall. Whether or not the overall operation of City Hall is a governmental or proprietary function,[4] the City's provision of *security services* at City Hall is plainly a governmental function, for which the City is entitled to sovereign immunity. We addressed a similar question in *Gregg v. City of Kansas City*, 272 S.W.3d 353 (Mo. App. W.D. 2008). In *Gregg*, a woman was shot and killed by an individual who was

---

[4] *See generally Weiser v. Kansas City*, 481 S.W.2d 568, 570–71 (Mo. App. 1972) (discussing whether the operation of the City Hall of Kansas City constituted a governmental or proprietary function for sovereign immunity purposes).

employed as a security officer at Kansas City International Airport. The woman's survivors sued the City of Kansas City, alleging that it had negligently hired and retained the security officer, and had negligently entrusted him with the handgun he used in the shooting. 272 S.W.3d at 356. The family members alleged that the City was performing a proprietary function "in operating an airport, hiring trained security guards, providing the guards with weapons, and allowing the guards to carry the weapons off airport premises without restriction." *Id.* at 360.

This Court held that, even if operation of the airport itself constituted a proprietary function, *providing security* for the airport was a governmental function, for which the City was entitled to sovereign immunity.

> While owning and operating an airport may, at least in some instances, be a proprietary function, airport security seems, notwithstanding the authorities on which Plaintiffs rely, to be prototypically a governmental function. It is akin to the act of policing. Although the operation and supervision of a police department are acts involving discretion of public officials, they constitute the exercise of a governmental function. . . . [R]egardless of the official powers and status of the City's security employees, when the City provides airport security it *is* engaged in a governmental activity. This is due to the *nature* of the activity itself, together with the fact that the City is a local governmental entity.

272 S.W.3d at 361 (citation and quotation marks omitted); *see also City of Grandview*, 490 S.W.3d at 371 ("The operation of a police department is a governmental function whereby sovereign immunity attaches to a municipality." (citation omitted)); *Wasserman v. Kansas City*, 471 S.W.2d 199, 201–02 (Mo. banc 1971) (while maintenance of public parks may be a proprietary function, "maintain[ing] good order in the park" constitutes "a police function, a governmental function for which [Kansas City] may not be held liable").

This case is controlled by our decision in *Gregg*. As in *Gregg*, the City provides security services at City Hall for the common good of all, "as an agent of the state." 272 S.W.3d at 360. The security services provided at City Hall are "akin

to the act of policing." *Id.* at 361.  If anything, the argument for characterizing the City's security services as "governmental" is stronger in this case than in *Gregg*, because here, the City is providing security services to the seat of city government, not merely to an airport.  Because the City was performing a governmental function at the time that it allegedly defamed Chastain, it is entitled to sovereign immunity.  Further, Chastain conceded in his Amended Petition that no statutory exception to sovereign immunity applies in this case.[5]  The circuit court therefore erred in failing to grant the City's motion to dismiss.

## Conclusion

The City is entitled to sovereign immunity against Chastain's defamation claim.  We make our preliminary writ of prohibition permanent, and direct the circuit court to take no further action in the underlying proceeding, other than to enter an order dismissing the case with prejudice.

Alok Ahuja, Judge

All concur.

---

[5]     Even where sovereign immunity is applicable, "[t]he General Assembly has expressly waived sovereign immunity where a person sustains injuries either: (1) 'directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment' or (2) 'caused by [a dangerous] condition of a public entity's property.'" *Crouch*, 444 S.W.3d at 521 (quoting § 537.600.1(1)–(2), RSMo).  In addition, "[t]he General Assembly has further waived sovereign immunity where a public entity has purchased liability insurance, but the waiver applies only up to 'the maximum amount of and only for the purposes covered by such policy of insurance.'" *Id.* (quoting § 537.610.1, RSMo).