Travis BRENNAN, a Minor, By and Through his Next Friend, Laurie BRENNAN and Wayne Brennan, Appellants,

v.

The CURATORS OF THE UNIVERSITY OF MISSOURI, Respondent.

No. WD 52678.

Missouri Court of Appeals, Western District.

April 8, 1997.

David R. Smith, Robert E. James, Overland Park, KS, for appellants.

Susan Ford Robertson, Mariam Decker, Columbia, for respondent.

Before ULRICH, C.J., P.J., and BERREY and EDWIN H. SMITH, JJ.

BERREY, Judge.

This appeal comes to us following the dismissal of appellants' first amended petition alleging medical malpractice and seeking damages against the Curators of the University of Missouri (respondent Curators), among others, for Travis Brennan's premature birth. It is alleged that Travis' premature birth has resulted in substantial and permanent damage to his health. In granting the respondent Curators' motion to dismiss, the circuit court ruled that the respondent Curators "is a public entity entitled to sovereign immunity for the claims asserted" and that it "has not waived any sovereign immunity which it possesses." Appellants raise three points of circuit court error. First, it is claimed that the respondent Curators is not protected by sovereign immunity because it has waived immunity by adopting the University of Missouri Medical Professional and Patient General Liability Plan (General Liability Plan), which operates as a self-insurance plan and covers the allegations in this lawsuit. Second, appellants contend the Curators' motion to dismiss was actually a motion for summary judgment and, as such, did not comply with Rule 74.04. Third, appellants further claim the Curators' motion to dismiss was premature in that no discovery has been conducted on the issue of waiver of immunity. Affirmed.

On September 19, 1993, Travis was born at the University Hospital and Clinics in Co-lumbia, which is operated by the Curators. He weighed one pound and thirteen ounces. Several years prior to the birth, appellant Laurie Brennan underwent surgical procedures that put her at risk of being unable to carry a pregnancy to term without additional medical care.

As the result of the alleged negligence in the pre-natal care received by Laurie, appellants sought damages from the Curators, John Gay, M.D., Lynn Puckett, M.D., and Pamela Wiseman.[1] At the time of the alleged negligence, Dr. Gay was on the faculty and staff of the University of Missouri–Columbia School of Medicine in the obstetrics and gynecology department and Dr. Puckett was a resident in the same department. Wiseman was a medical student who, although not licensed to practice medicine, was authorized to care for patients. Appellants' petition alleges medical negligence against Dr. Gay, Dr. Puckett and Wiseman; and against Dr. Gay under the theory of respondeat superior because he supervised both Dr. Puckett and Wiseman. The petition also alleges medical negligence against the Curators, including a count under the theory of respondeat superior for the alleged negligence of the above-named medical personnel.

On August 17, 1995, the Curators filed a motion to dismiss the petition alleging a failure to state a claim on the basis of sovereign immunity. The suggestions in support of the motion specifically argued that appellants failed to plead in any count of the petition that the Curators waived sovereign immunity.

Appellants filed suggestions in opposition to the motion arguing that dismissal would be premature since the issue of sovereign immunity was not properly before the court. Appellants requested the court to deny the motion until discovery could be conducted on the issue of sovereign immunity. Appellants additionally argued that they did not carry the burden to plead or prove waiver of immu-

---

1. Appellants' petition also included counts of alleged negligence against two nurses, Cindy Gates and Diana Stout, and the Pettis County Health Center and the Morgan County Health Center. On March 27 and 28, 1996, the counts against Gates and Stout were dismissed based on the nurses' official immunity. The judgments dismissing those counts were appealed to this Court. However, as none of these defendants are connected with the Curators or the University Hospital and Clinics, their inclusion in this lawsuit is not pertinent to this appeal.

nity. Rather, it was up to the Curators to prove they were eligible for immunity. Appellants further argued that the motion to dismiss was converted to a motion for summary judgment because the Curators included provisions of the General Liability Plan, which was outside of the pleadings.

On April 3, 1996, the circuit court granted the motion to dismiss. Appellants requested that the motion be reconsidered as a motion for summary judgment and argued that the motion to dismiss did not comply with Rule 74.04. These efforts failed. At appellants' request, the circuit court later amended its order in favor of the Curators by certifying the order as final for the purposes of appeal.

 Upon review of the circuit court's dismissal of a petition, we determine "if facts pleaded and inferences reasonably drawn therefrom state any ground for relief, treating facts averred as true and construing averments liberally and favorably to the plaintiff." *K.G. v. R.T.R.*, 918 S.W.2d 795, 797 (Mo. banc 1996). In making our determination, we may not address the merits of the case or consider evidence outside the pleadings. *I.R. Kirk Farms, Inc. v. Pointer*, 876 S.W.2d 283, 285 n. 2 (Mo.App.1994).

 We begin with a brief examination of sovereign immunity law in Missouri. In *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977), the Supreme Court prospectively abrogated the common law doctrine of sovereign immunity effective August 15, 1978. The legislature responded by enacting §§ 537.600—.650, RSMo 1978, which reinstated the doctrine with two exceptions. Sovereign immunity is expressly waived for torts arising out of (1) the negligent operation of motor vehicles by public employees and (2) the dangerous condition of a public entity's property. § 537.600.1, RSMo 1994. Section 537.600.2, RSMo 1994 reads:

> The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section

are absolute waivers of sovereign immunity in all cases within such situations *whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.*

(emphasis added).[2] *See* § 34.260, RSMo 1994. In addition, when a public entity purchases liability insurance, § 537.610.1, RSMo 1994 provides that immunity is waived as to torts other than those set out in § 537.600 to the extent of and for the specific purposes covered by the insurance purchased. *Fantasma v. Kansas City Bd. of Police Com'rs*, 913 S.W.2d 388, 391 (Mo.App.1996); *Fields v. Curators of University of Missouri*, 848 S.W.2d 589, 592–93 (Mo.App.1993). A waiver of sovereign immunity must be construed narrowly. *Fantasma*, 913 S.W.2d at 391.

 It is undisputed that the respondent Curators is "a public entity with the status of a governmental body and, as such, is immune from suit for liability in tort in the absence of an express statutory provision." *Krasney v. Curators of Univ. of Mo.*, 765 S.W.2d 646, 649 (Mo.App.1989); Mo. Const. art. IX, § 9(a). The principal issue before us then is whether appellants or the Curators had the affirmative duty to raise the issue of sovereign immunity.

Given the nature of appellants' claims in this case, it is clear that the only possible waiver of the Curators' sovereign immunity occurred when it adopted the General Liability Plan, which appellants argue operates as a self-insurance plan under § 537.610. The General Liability Plan's Coverage Agreement reads:

> The Employer, based on the provisions of the Plan and from the Plan Trust will pay on behalf of the covered person all sums which the covered person shall become legally obligated to pay as damages because of injury to the person or property of a patient arising out of the operations of a medial facility or because of injury aris-

---

2. § 537.600.2 was the legislature's response to *Bartley v. Special Sch. Dist. of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983) and other cases which required plaintiffs to plead and prove that a public entity had liability insurance to demonstrate a waiver of sovereign immunity in "suits

for damages arising out of the negligent operation of motor vehicles caused by public employees or caused by a dangerous condition of public entity property...." William M. Barvick, *Sovereign Immunity—A Corpse That Will Not Stay Down*, 41 J. Mo. Bar 293, 294 (1985).

ing out of the rendering of or failure to render, while the Plan is in effect, professional services by the covered person, or by any person for whose acts or omissions such covered person is legally responsible....

Covered Persons under the General Liability Plan include:

The Employer and any of Employer's administrative personnel; Individual members of the Board of Curators of the University of Missouri and the Board of Curators of the University of Missouri; and All employees.

The General Liability Plan also includes a disclaimer which provides that "[n]othing in the Plan shall be construed as a waiver of any governmental immunity of the Employer, the Board of Curators of the University of Missouri nor any of its employees in the course of their official duties." ·

Appellants did not plead a waiver of sovereign immunity in their First Amended Petition nor did they mention the existence of the General Liability Plan. In reliance upon *Greene County v. State,* 926 S.W.2d 701 (Mo. App.1996), appellants contend Rule 55.08 dictates that sovereign immunity, like other affirmative defenses, must be raised by the defendant in a responsive pleading. It is not, appellants suggest, an element of a plaintiff's claim that must be pleaded in a petition. In *Greene County,* this court reviewed an order granting summary judgment in favor of Greene County, Missouri on its petition for declaratory judgment against the Missouri Office of Administration. The trial court awarded Greene County the unpaid portion of the cost fee bills, for which the county was entitled to reimbursement from the State under Chapter 550 RSMo, plus prejudgment interest. In its appeal, the State challenged the prejudgment interest award on the basis that the State was protected by sovereign immunity against such damage awards. 926 S.W.2d at 704. Greene County argued that the State waived its immunity because the State failed to plead sovereign immunity as an affirmative defense as required by Rule 55.08. *Id.* We agreed with Greene County because:

Under Rule 55.08, a party is required to put the opposing party on notice of each affirmative defense it intends to rely on or the defense is waived. We find that the State waived its right to rely on the defense of sovereign immunity as to the prejudgment interest award by failing to specifically raise the issue.

The State alternatively cites *Molasky v. Brown,* 720 S.W.2d 412 (Mo.App.1986) to argue that an affirmative defense need not be specifically pled where the applicability of the defense shows from the face of the pleadings. We find that even if this were a valid exception in a sovereign immunity case, the face of the pleadings here do not plainly raise the issue. Because this resembles a contract action rather than a tort action, there is even a question whether sovereign immunity would apply if it had been properly raised.

*Id.*

The Curators did not answer the counts in the appellants' petition which alleged medical negligence on the part of the Curators. The Curators instead filed a motion to dismiss contending that appellants' petition did not state a claim for relief because the Curators are protected by sovereign immunity. The Curators rely primarily upon *State ex rel. City of Marston v. Mann,* 921 S.W.2d 100 (Mo.App.1996). The underlying lawsuit in *Marston* involved allegations by a motorist, who was injured in an accident with two other motorists who were drag racing, that drag racing constituted a dangerous condition because it was known by the city that cars often drag raced on the road in question. The plaintiff motorist argued that the city failed to install traffic control devices and to enact preventative traffic regulations. The city filed a motion to dismiss the petition for failure to state a cause of action, but Judge Mann denied the motion, which was based partly on sovereign immunity. The city sought a writ of prohibition and alternatively in mandamus to restrain Judge Mann from proceeding with the case. On appeal, it was held that plaintiff motorist's allegations failed to plead a dangerous condition. 921 S.W.2d at 104. Judge Mann then argued that the city had waived its immunity under

§ 71.185, RSMo 1994 [3] by purchasing liability insurance. The court rejected this argument because:

> [T]here are no allegations in Plaintiff's First Amended Petition that specifically allege [the city] has waived sovereign immunity with the purchase of insurance under § 71.185. In order to survive the Motion to Dismiss herein the Plaintiffs must have pled facts in the trial court which would have brought [the city] under the purview of § 71.185.

*Id. See also Ozark Silver Exchange, Inc. v. City of Rolla,* 664 S.W.2d 50, 51 (Mo.App. 1984); *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 297 (Mo.App.1983); *Newson v. City of Kansas City,* 606 S.W.2d 487, 489–90 (Mo.App.1980); 57 Am.Jur.2d Municipal, etc., Tort Liability § 663 (1988). The court directed Judge Mann to sustain the city's motion to dismiss. 921 S.W.2d at 104.

■ Sections 71.185 and 537.610, RSMo 1994 both permit a public entity to purchase tort liability insurance. Despite differences in language and the fact that § 71.185 applies to municipalities and § 537.610 applies to political subdivisions of the State, the purchase of liability insurance may function as a waiver of sovereign immunity under either statute. *State ex rel. Bd. of Trustees v. Russell,* 843 S.W.2d 353, 360 (Mo. banc 1992). Therefore, we find §§ 71.185 and 537.610 to be sufficiently analogous that we may rely on the above-cited cases referring to § 71.185 in making our determination here. Judge Wasserstrom's dissent in *Bartley* appears to support our finding.[4] 649 S.W.2d at 873.

Immunity, either official [5] or sovereign, is not specifically enumerated in Rule 55.08 as an affirmative defense. The affirmative defenses listed are not meant to be exhaustive since Rule 55.08 allows for "any other matter constituting an avoidance or affirmative defense" and is not limited to the affirmative defenses listed therein. The holding in *Greene County* indicates that sovereign immunity is an affirmative defense. 926 S.W.2d at 704. Sovereign immunity may be an affirmative defense, but, other than *Greene County,* there is little authority for that proposition.

■ In any event, appellants failed to plead facts alleging the Curators adopted the General Liability Plan. The General Liability Plan allegedly operates as a self-insurance plan. If so, the General Liability Plan would bring the appellants within the purview of § 537.610 since it is clear that the dual exceptions to sovereign immunity set forth in § 537.600 are not implicated in this case. Thus, the only way for appellants to penetrate the Curators' immunity is to demonstrate the existence of the General Liability Plan *and* that it covers the claims asserted by appellants against the Curators. Appellants did not do so and, as a result, failed to state a claim for relief.

■ The purchase of liability insurance does not waive sovereign immunity unless it provides for coverage of liability other than the two exceptions set forth in § 537.600. *Fields,* 848 S.W.2d at 592–93. By requiring appellants to plead and prove the existence

---

3. § 71.185.1 reads:

 Any municipality engaged in the exercise of governmental functions may carry liability insurance and pay the premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions, and shall be liable as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions to the extent of the insurance so carried.

4. The dissent contains a discussion regarding the construction of §§ 537.600 and 537.610. The majority used "Construction No. 1," but Judge Wasserstrom advocated the use of "Construction No. 2," which is now the law in Missouri. *See*

Barvick, supra. As for the connection between §§ 71.185 and 537.610, Judge Wasserstrom wrote:

> [T]he concept of interpreting Section 537.610–1 as permitting liability by public bodies to the extent of insurance coverage is not new. Section 71.185 did just that but limited its operation to municipal corporations. Section 537.610–1, as interpreted by Construction No. 2, essentially extends to all political subdivisions the same option previously granted only to municipal corporations.

5. In *Molasky,* 720 S.W.2d at 414, the court determined that official immunity is an affirmative defense to pleaded and proved. However, this approach was questioned in *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 844 n. 2 (Mo.App. 1995).

of insurance to bring them within the purview of § 537.610, we note the distinction between this requirement and a similar requirement which originated in *Bartley*, supra. Contrary to the holding in *Bartley*, as previously mentioned, insurance is not a prerequisite to a waiver of sovereign immunity in cases alleging the negligent operation of motor vehicles or the dangerous condition of public property. Those exceptions to sovereign immunity are absolute. A public entity need not acquire insurance to protect itself from other tort claims because, with the exception of certain other statutory exceptions not here applicable, sovereign immunity is otherwise retained. In the absence of insurance, a public entity is protected from further tort liability. Public entities may, however, acquire insurance under §§ 71.185 and 537.610 and, as a result, subject themselves to suit within the limitations described in the statutes. The acquisition of tort liability insurance under current law is purely voluntary on the part of a public entity. The statutes are unambiguous. We thus are able to avoid the confusion surrounding the construction of §§ 537.600 and 537.610 following *Bartley*.

We believe that *Marston* and other cases referring to § 71.185 are more persuasive than *Greene County*.

For the foregoing reasons, we hold that appellants were obligated to plead facts sufficient to allege a waiver of sovereign immunity by virtue of the Curators' adoption of the General Liability Plan. We note that it is not necessary for us to reach the issue of whether the General Liability Plan would have in fact waived the Curators' sovereign immunity. The trial court's dismissal of appellants' petition is affirmed. Point denied.

In light of our holding, we have treated the Curators' motion as a motion to dismiss rather than a motion a for summary judgment. Thus, we need not reach appellants' two remaining points on appeal.

Affirmed.

All concur.