

# In the Missouri Court of Appeals
## Eastern District

KQUAWANDA MOORE,

    Plaintiff/Appellant,

vs.

LIFT FOR LIFE ACADEMY, INC.,

    Defendant/Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. ED102765

Appeal from the Circuit Court of
the City of St. Louis

Honorable Robert H. Dierker

Filed: March 15, 2016

### OPINION

Kquawanda Moore appeals the trial court's summary judgment in favor of her former employer, the charter school Lift for Life Academy, on Moore's claim of wrongful discharge. We affirm.

### Background

Moore was a bus driver for the Academy until she was discharged in October 2013. Moore then filed an action for wrongful discharge claiming that the Academy fired her due to her sexual orientation. The Academy responded with a motion for summary judgment asserting that, as a quasi-public entity, it was protected from liability on Moore's claim by virtue of sovereign immunity.

The trial court granted the Academy's motion, reasoning that charter schools are considered public schools under §160.405, and the Academy's participation in the Missouri

Public Entity Risk Management Fund does not operate as a waiver of immunity.

Moore appeals and contends that the trial court erred in granting summary judgment for the Academy because the legislature did not intend for charter schools to be protected by sovereign immunity, as evidenced by the statutory mandate that charter schools maintain liability insurance for tort claims. The Academy responds that charter schools are treated as public entities in all other respects, and the relevant statutes contain no clear exception for sovereign immunity.

**Standard of Review**

Appellate review of summary judgment is *de novo.* Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818 (Mo. 2007). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id.

The existence of sovereign immunity and questions of statutory interpretation are issues of law, which we review *de novo*. Wyman v. Missouri Dep't of Mental Health, 376 S.W.3d 16, 18 (Mo. App. W.D. 2012). The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. P.L.S. ex rel. Shelton v. Koster, 360 S.W.3d 805, 808 (Mo. App. W.D. 2011).

**Discussion**

Charter schools are created and governed by §160.400 *et seq.* "A charter school is an independent public school." §160.400.1. A charter school is independent in that it is a non-profit corporation overseen by a sponsor entity (*e.g.*, a school board, university, or the Missouri charter public school commission). §160.400.7; §160.400.3. Thus, except as specified in chapter 160 (examples below), charter schools are "exempt from all laws and rules relating to schools,

governing boards, and school districts." §160.405.4(3).  However, charter schools receive public funds from the Missouri Department of Elementary and Secondary Education. §160.415.4.  Chapter 160 specifies that charter schools are subject to the same laws and rules imposed on public schools in many organizational respects. For example, any entity operating, administering, or otherwise managing a charter school is considered a quasi-public governmental body for purposes of open records requirements. §160.405.13.  Likewise, for auditing purposes, charter schools are treated as political subdivisions on the same terms and conditions as the school districts in which they are located. §160.405.4(4).  Charter school employees are considered public school district employees for purposes of retirement benefits. §160.420.3.  Charter school board members are subject to the same liability as public school board members "in any other public school district in this state." §160.405.12.  Most relevant here, charter schools "shall … provide liability insurance to indemnify the school, its board, staff, and teachers against tort claims" and, "for the purposes of securing such insurance … shall be eligible for the Missouri public entity risk management fund." §160.405.4(4).  That fund (MOPERM) is created and governed by §537.700 *et seq*., notably titled Risk Management for Public Entities. MOPERM provides tort liability insurance coverage for public entities on claims not barred by sovereign immunity, namely vehicular negligence and dangerous premises claims, actionable by virtue of the limited statutory waiver of immunity under §537.600.  In the MOPERM context, "public entity" includes school districts and "any other local public body created by the general assembly." §537.700.2(3).

The foregoing provisions read together leave no doubt that charter schools are public schools under chapter 160 and also public entities under chapter 537.  Moore does not dispute this. But despite this clear construct, Moore insists that the legislature's intent to leave charter

3

schools exposed to broader tort liability is evident in that chapter 160 *requires* charter schools to carry tort liability insurance whereas chapter 537 merely *allows* other public bodies to do so. §160.405.4(4)); §537.610.  We decline to draw such a profoundly consequential inference from this distinction. Legislative intent is determined by considering the whole act and its purposes and by seeking to avoid unjust or absurd results.  P.L.S. ex rel. Shelton v. Koster, 360 S.W.3d at 808.

"In the absence of an *express* waiver in a particular statute, a state agency generally has sovereign immunity from common-law tort actions in all but three circumstances: negligent operation of a motor vehicle, §537.600.1(1); a dangerous condition on public property, §537.600.1(2); and where the entity has purchased liability insurance (but only to the extent of the policy's coverage), §537.610."  Wyman v. Missouri Dep't of Mental Health, 376 S.W.3d 16, 19 (Mo. App. W.D. 2012). (emphasis added)  Here, instead of expressly waiving charter school immunity in chapter 160, the legislature expressly authorized charter schools to *fully* satisfy the insurance requirement therein by obtaining coverage as public entities through MOPERM (§160.405.4(4)) and further provided that "participation in the fund has the same effect as purchase of insurance by the public entity." §537.705.1.  Thus, in plain terms, charter schools are treated exactly like public schools for purposes of risk management and liability. It logically follows, then, that charter schools are also treated exactly like public schools for purposes of immunity *from* liability.  If the legislature had intended to leave charter schools exposed to unlimited tort liability beyond the narrow claims covered by MOPERM, contrary to their treatment as public schools in every other respect, it could have said so directly and would not have deemed MOPERM coverage alone sufficient to satisfy the tort liability insurance requirement of §160.405.4(4).

4

Moore also argues that the legislature's intent to deny charter schools sovereign immunity is apparent in §160.405.4(3), which states that charter schools are "exempt from all laws and rules relating to schools, governing boards, and school districts" except as set forth in chapter 160. Essentially, Moore interprets this provision to mean that no laws apply to charter schools except those set forth in chapter 160. This interpretation not only leads to absurd results but also is not supported by the plain language of the statute, which limits the exemption to laws *relating to schools….*" The exemption merely relieves charter schools of certain obligations imposed on public schools, boards, and districts. It does not obviate the broader body of established Missouri laws and legal doctrines, among them sovereign immunity.

In sum, the trial court correctly concluded charter schools are public schools for purposes of sovereign immunity. From here, Moore does not challenge the trial court's subsequent determination that the procurement of liability insurance is not tantamount to a waiver of immunity. In Topps v. City of Country Club Hills, this court held that participation in MOPERM does not constitute a waiver of sovereign immunity except as expressly covered under the policy. 272 S.W.3d 409 (Mo. App. E.D. 2008). Specifically, we observed that §537.600 and MOPERM policy language waive immunity only for motor vehicle and premises liability and do not cover whistleblower retaliation claims. Similarly here, the Academy's MOPERM policy covers motor vehicle and premises liability only, further stating: "Nothing contained in this section, or the balance of the document, shall be construed to broaden the liability of the member Agency beyond the provisions of [§537.600 to §537.610] nor to abolish or waive any defense at law which might otherwise be available." This language is identical to that examined in Topps. Accordingly, the Academy did not waive its immunity by procuring MOPERM coverage in satisfaction of the insurance requirement.

**Conclusion**

Moore's assertion that the legislature intended to expose charter schools to greater tort liability than that faced by other public entities is without merit. The Academy is protected by sovereign immunity, so Moore's common-law wrongful discharge claim of discrimination on the basis of sexual orientation is barred as a matter of law.[1] The trial court's summary judgment is affirmed.

_____
Lisa Van Amburg, Chief Judge

Kurt S. Odenwald, J., and
Philip M. Hess, J., concur.

---

[1] It bears mention that sexual orientation is not a protected category under the Missouri Human Rights Act (RSMo Chapter 213). Pittman v. Cook Paper Recycling Corp., 2015 WL 6468372. Had Moore's claim alleged discrimination on the basis of race, color, religion, national origin, sex, ancestry, age, or disability, her claim would be recognized under the MHRA, which expressly waives sovereign immunity for public employers. See §§213.010 and 213.055.