Laurie **HOLESAPPLE**, et al.,
**Plaintiffs-Appellants,**

v.

**MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Defendant-Respondent.**

**No. SD 34122**

Missouri Court of Appeals,
Southern District,
**Division One.**

Filed: April 6, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2017

Attorney for Appellants: H. Lynn Henry of West Plains, MO.

Attorney for Respondent: Laurel E. Stevenson and Terri L. Parker of Springfield, MO.

Amicus Curiae United Fire & Casualty: John W. Grimm and John C. Steffens of Cape Girardeau, MO.

JEFFREY W. BATES, P.J.

This case arises out of an automobile accident involving Joshua Holesapple (Holesapple) and Preston Ary (Ary) that occurred near a construction zone on Route 63 in West Plains, Missouri. Holesapple died in the accident. The Missouri Highways and Transportation Commission (MHTC) was overseeing the construction project and hired H.R. Quadri Contractors, L.L.C. (Quadri) to perform much of

the work. After the accident, Holesapple's wife, three children and parents (hereinafter referred to collectively as Appellants) filed a wrongful death suit against Ary, Quadri and MHTC. Appellants settled with everyone except MHTC, and the case proceeded to trial based on an alleged dangerous condition of MHTC's property. The jury returned a verdict against MHTC in the amount of $6,700,000. The trial court reduced the judgment against MHTC to the statutory sovereign immunity cap of $409,123 pursuant to § 537.610.[1] Thereafter, Appellants filed a motion for apportionment, which asserted that each of the six individual plaintiffs was entitled to the full amount of the statutory cap. That aspect of the apportionment motion was denied. The trial court entered an amended judgment against MHTC in the amount $409,123 and apportioned that sum equally among the individual plaintiffs so that each was awarded $68,187.

Appellants present two points for decision. In Point 1, Appellants contend the trial court erred by reducing the judgment to $409,123 pursuant to § 537.610 because MHTC waived sovereign immunity by procuring liability insurance with larger limits, which covered the wrongful death claim involving Holesapple. In Point 2, Appellants contend the trial court erred by reducing the judgment to $409,123 pursuant to § 537.610 because, rather than sharing one capped amount, each plaintiff was individually entitled to recover $409,123 from MHTC. Finding no merit in either point, we affirm.

### Standard of Review and Overview of Relevant Law

■ "The existence of sovereign immunity and questions of statutory interpretation are issues of law," which this Court reviews *de novo*. *Moore v. Lift for Life Academy, Inc.*, 489 S.W.3d 843, 845 (Mo. App. 2016); *Wyman v. Missouri Department of Mental Health*, 376 S.W.3d 16, 18 (Mo. App. 2012). The "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Moore*, 489 S.W.3d at 845. Moreover, "statutory provisions waiving sovereign immunity must be strictly construed." *Richardson v. State Hwy. & Transp. Comm'n*, 863 S.W.2d 876, 880 (Mo. banc 1993).

To better understand the issues involving sovereign immunity in this case, a brief overview of sovereign immunity law in Missouri is necessary. In *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977), our Supreme Court prospectively abrogated the common law doctrine of sovereign immunity effective August 15, 1978. In response, the legislature enacted §§ 537.600–.650 RSMo (1978), which reinstated the doctrine with two exceptions. Sovereign immunity was expressly waived for torts arising out of: (1) the negligent operation of motor vehicles by public employees (the motor vehicle waiver); and (2) the dangerous condition of a public entity's property (the dangerous property waiver). § 537.600(1)–(2) RSMo (1978). In *Bartley v. Special School Dist. of St. Louis Cty.*, 649 S.W.2d 864 (Mo. banc 1983), our Supreme Court held that "sovereign immunity is only waived in the two areas provided by § 537.600, and then only to the extent that the public entity acquires insurance for such purpose." *Id.* at 870 (also construing § 537.610.1). The legislature again responded by amending § 537.600 to clarify that the express waiver of sovereign immunity in the two specified instances "are absolute waivers of sovereign immunity in all cases within such situations ... *whether or not the public entity is covered by a*

---

1. All references to statutes are to RSMo Cum. Supp. (2013) unless otherwise specified.

*liability insurance for tort."* § 537.600.2 RSMo (1986) (emphasis added); ***Oldaker v. Peters***, 817 S.W.2d 245, 249 (Mo. banc 1991); *see **Martin v. City of Washington***, 848 S.W.2d 487, 490 (Mo. banc 1993). Since this amendment, the language of these first two provisions of § 537.600 has remained unchanged. *See* § 537.600.1-.2.[2]

At the same time the legislature expressly waived sovereign immunity in the two circumstances specified by § 537.600.1(1)-(2), the amount that could be recovered from a governmental entity was limited via statutory caps contained in § 537.610.2 RSMo (1978). *See **Richardson***, 863 S.W.2d at 880. Section 537.610.2 currently states:

> The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed two million dollars for all claims arising out of a single accident or occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287.

*Id.* Apart from changes over the years to the amount of the caps, the language of this particular provision has remained unchanged since its inception in 1978. The purpose of the statutory caps on recovery was discussed in ***Winston v. Reorganized School District R–2***, 636 S.W.2d 324 (Mo. banc 1982), in which our Supreme Court explained that "[i]t is readily apparent the legislature intended to balance the need for protection of governmental funds against a desire to allow redress for claimants injured in limited classes of accidents." *Id.* at 328; *see also **Richardson***,

---

2. Section 537.600.1-.2 states:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

863 S.W.2d at 880.[3]

A third method of waiving sovereign immunity is authorized in § 537.610.1. That method involves the purchase of liability insurance (the insurance waiver), but that form of waiver only applies to "torts *other than* the two exceptions set forth in § 537.600." *Brennan By & Through Brennan v. Curators of the Univ. of Missouri*, 942 S.W.2d 432, 436 (Mo. App. 1997) (emphasis added).[4] When a public entity purchases liability insurance to cover torts, other than the negligent operation of motor vehicles by public employees and the dangerous condition of a public entity's property, § 537.610.1 provides that sovereign immunity is waived as to those other torts "to the extent of and for the specific purposes covered by the insurance purchased." *Brennan*, 942 S.W.2d at 434 (involving medical malpractice); *Hummel v. St. Charles City R–3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003) (involving wrongful termination); *see also State ex rel. Cass Med. Ctr. v. Mason*, 796 S.W.2d 621, 624 (Mo. banc 1990) ("Section 537.610 provides an independent basis for waiving sovereign immunity—a basis cemented in

the existence of coverage for the damage or injury at issue under the language of the insurance policy"). Coverage limits, identical to the statutory caps previously set forth under § 537.610.2, are also specified for the insurance exception under § 537.610.1, *i.e.*, that the "maximum amount of such coverage" shall not exceed $2,000,000 for "all claims arising out of a single occurrence" and $300,000 "for any one person in a single accident or occurrence[.]" § 537.610.1. With these principles in mind, we address Appellants' two points on appeal.

## Discussion and Decision

### Point 1

Appellants' first point contends the trial court erred in reducing the judgment against MHTC to the statutory sovereign immunity cap of $409,123 pursuant to § 537.610. The following facts are relevant to this point.

The road construction contract between Quadri and MHTC incorporated standard specifications for highway construction

**3.** As the *Winston* court further explained:
Though public funds must be available for essential governmental services, taxes must be held at reasonable levels, and limiting recovery to certain enumerated governmental torts allows for fiscal and actuarial planning consonant with orderly stewardship of governmental funds, while permitting victims of specified torts to recover for losses within the limits prescribed by § 537.610. *Winston*, 636 S.W.2d at 328. It is because of "the goals of limiting the government's financial exposure while granting victims some compensation" that "statutory provisions waiving sovereign immunity must be strictly construed." *Richardson*, 863 S.W.2d at 880.

**4.** Section 537.610.1 provides:
The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insur-

ance for tort claims, made against the state or the political subdivision, but the maximum amount of such coverage shall not exceed two million dollars for all claims arising out of a single occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287, and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

(the specifications) requiring Quadri to indemnify MHTC for Quadri's own negligence in the event of a lawsuit arising out of the construction project. To ensure Quadri met the indemnification obligations, the specifications also required Quadri to: (1) carry commercial general liability insurance, in the minimum amount of $500,000 per claimant and $3,000,000 per occurrence; and (2) name MHTC as an additional insured.

Quadri purchased two insurance policies from United Fire & Casualty Company (United Fire). The first was a commercial general liability policy (the general policy) with coverage up to $1,000,000 per occurrence, and the second was a commercial umbrella policy (the umbrella policy) with coverage up to $5,000,000 per occurrence (collectively, the policies). As required by the specifications, the general policy included an "additional insured" provision to cover MHTC, but only with respect to Quadri's liability which may be imputed to MHTC. Additional insureds under the general policy were automatically included as "additional insureds" under the umbrella policy and limited to the same coverage.

The accident involving Holesapple occurred in April 2013. Appellants filed their wrongful death action a few months later in mid-July 2013, naming Ary, Quadri and MHTC. With respect to MHTC, Appellants alleged MHTC waived immunity under § 537.600.1(2) for damages caused by a dangerous condition of its property. In late July 2013, Appellants settled with Ary for $50,000 and an underinsured motorist carrier for $100,000. In March 2015, Appellants settled with Quadri for $800,000 and released Quadri and United Fire, but reserved their claims against MHTC.

The case then proceeded to trial against MHTC alone. Appellants submitted the case to the jury under the dangerous property exception to sovereign immunity. The jury returned the verdict of $6,700,000, which the trial court reduced to the statutory cap "for any one person in a single accident" pursuant to § 537.610.2. The amount stated in the statute is $300,000 but the cap adjusts to $409,123 pursuant to § 537.610.5.[5]

■ Appellants' first point contends the trial court erred in reducing the judgment to the statutory cap because "under section 537.610.1 [Appellants] were entitled to judgment to the extent of MHTC's applicable liability insurance, in that MHTC waived sovereign immunity by procuring $6,000,000 in liability insurance which covered the wrongful death of Joshua Holesapple." We disagree.

■ "As an executive department of state government, the MHTC is a public entity that is shielded from suit by sovereign immunity." *Cottey v. Schmitter*, 24 S.W.3d 126, 128 (Mo. App. 2000); *see State ex rel. Missouri Highway and Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998). As previously explained, however, sovereign immunity is waived for cases involving injuries caused by a dangerous condition of public property under § 537.600.1(2). *Dierker*, 961 S.W.2d at 60. Here, there is no question that MHTC's liability in this matter was based on the dangerous property exception to sovereign immunity. The fundamental problem with Appellants' argument that MHTC waived sovereign immunity "by procuring ... liability insurance" under § 537.610.1 is that sovereign immunity was already explicitly waived by statute for a dangerous condition of a public entity's property pursuant

---

5. Section 537.610.5 adjusts the limits each year "in accordance with the Implicit Price Deflator for Personal Consumption Expendi-

tures...." There is no dispute in this case that the $300,000 limit for one person in a single accident adjusts to $409,123.

to § 537.600.1(2). As expressly declared by the language of § 537.600.2, the dangerous condition of property is an "absolute" waiver of sovereign immunity "whether or not the public entity is covered by a liability insurance for tort." *Id.*; *Martin*, 848 S.W.2d at 490; *see Brennan*, 942 S.W.2d at 436. Consequently, Appellants' arguments concerning the insurance exception and the policies in this case have no application here.

Appellants nonetheless argue that: (1) in addition to the absolute waiver under § 537.600.1(2) for a dangerous condition of property, a second waiver is possible under § 537.610.1 by the purchase of insurance, creating a "dual waiver"; and (2) as an additional waiver under § 537.610.1, when the insurance purchased covers the liability, recovery is possible "up to the limits of the insurance policy." To support this two-pronged argument, Appellants rely upon *Kunzie v. City of Olivette*, 184 S.W.3d 570 (Mo. banc 2006), and *Farm Bureau Town & Country Ins. Co. of Missouri v. Am. Alternative Ins. Corp.*, 347 S.W.3d 525 (Mo. App. 2011). We are unpersuaded by either prong of the argument because the cases upon which Appellants rely are distinguishable.

Appellants' first argument concerning an additional waiver by purchasing insurance pursuant to § 537.610.1 lacks merit because waiver under that provision applies to the purchase of insurance for torts "other than the two exceptions set forth in § 537.600." *Brennan*, 942 S.W.2d at 436; *Langley v. Curators of Univ. of Missouri*, 73 S.W.3d 808, 811–12 (Mo. App. 2002); *see Fantasma v. Kansas City Bd. of Police Comm'rs*, 913 S.W.2d 388, 391 (Mo. App. 1996); *Fields v. Curators of Univ. of Missouri*, 848 S.W.2d 589, 592-93 (Mo. App. 1993).[6] In *Brennan*, a case involving allegations of medical malpractice against the University, the western district of this Court explained:

> The purchase of liability insurance does not waive sovereign immunity unless it provides for coverage of liability other than the two exceptions set forth in § 537.600. *Fields*, 848 S.W.2d at 592-93. By requiring appellants to plead and prove the existence of insurance to bring them within the purview of § 537.610, we note the distinction between this requirement and a similar requirement which originated in *Bartley*, supra. Contrary to the holding in *Bartley*, as previously mentioned, insurance is not a prerequisite to a waiver of sovereign immunity in cases alleging the negligent operation of motor vehicles or the dangerous condition of public property. Those exceptions to sovereign immunity are absolute. A public entity need not acquire insurance to protect itself from other tort claims because, with the exception of certain other statutory exceptions not here applicable, sovereign immunity is otherwise retained. In the absence of insurance, a public entity is protected from further tort liability. Public entities may, however, acquire insurance under §§ 71.185 [specific to municipalities] and 537.610 and, as a result, subject themselves to suit within the limitations described in the statutes. The acquisition of tort liability insurance under current law is purely voluntary on the part of a public entity. The statutes are unambiguous. We thus are able to avoid the confusion surrounding the construction of §§ 537.600 and 537.610 following *Bartley*.

*Care St. Louis*, 313 S.W.3d 683, 687 n.5 (Mo. banc 2010).

---

6. *Fields* was superseded by statute on other grounds as stated in *Spradling v. SSM Health*

*Brennan*, 942 S.W.2d at 436-37; *see also State ex rel. Cass*, 796 S.W.2d at 623-24. Here, Appellants do not argue the insurance waiver in this case is for liability *other than* the absolute waiver for dangerous condition of property under § 537.600.1(2). As such, waiver under the insurance exception as provided by § 537.610.1 simply does not apply.

For that same reason, Appellants reliance on *Kunzie*, 184 S.W.3d 570, is misplaced. *Kunzie* did involve the application of § 537.610.1 because that case involved insurance for retaliatory discharge and wrongful termination—torts other than those specified in § 537.600. *Kunzie*, 184 S.W.3d at 572. Because the trial court dismissed plaintiff's petition prior to the commencement of discovery, however, plaintiff was not able to prove the existence and content of the insurance policy. *Id*. at 574. Our Supreme Court remanded the case to allow plaintiff "the opportunity to prove if, and to what extent, the city maintains liability insurance that covers his claims. If the city maintains insurance that covers these types of claims, then it will have waived its immunity under section 537.610 for the specific purpose of and to the extent of its insurance coverage." *Id*. at 574.

We note that, even if the insurance exception under § 537.610.1 and the *Kunzie* opinion applied in this case, the extent of coverage that can be provided by such a policy is explicitly limited in § 537.610. Section 537.610.1 is very clear about the "maximum amount" of coverage provided by an insurance policy purchased pursuant to this subsection:

The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against the state or the political subdivision, but *the maximum amount of such coverage shall not exceed two million dollars for all claims arising out of a single occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence*, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287, and *no amount in excess of the above limits shall be awarded or settled upon.* Sovereign immunity for the state of Missouri and its political subdivisions is waived *only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section* and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

*Id*. (emphasis added).[7] Given the coverage limits specified in § 537.610.1, reference to "the extent of coverage" in *Kunzie*, 184 S.W.3d at 574, necessarily limits recovery to coverage amounts *at or less than* the statutory limits of $2,000,000 "for all claims arising out of a single occurrence" and $300,000 "for any one person in a single accident or occurrence[.]" § 537.610.1; *see Kubley v. Brooks*, 141 S.W.3d 21, 29 n.9 (Mo. banc 2004). Accordingly, we disagree with Appellants' argument that *Kunzie* permits the recovery of an insurance policy limit greater than the explicit caps on coverage set out in § 537.610.1. To permit a greater monetary recovery would ignore the plain language

7. The statutory limits on recovery contained in § 537.610.1 are identical to those contained in § 537.610.2. Thus, even if the insurance exception under § 537.610.1 applied here, the same statutory limits of recovery would govern this case.

of that statute, which expressly applies to any "such policy of insurance purchased pursuant to the provisions of this section[.]" § 537.610.1. Moreover, § 537.610.1 includes an even stronger limitation not included in § 537.610.2: *"no amount in excess of the above limits shall be awarded or settled upon."* § 537.610.1 (emphasis added).[8]

*Farm Bureau*, 347 S.W.3d 525, does not support Appellants' argument for the following reasons. That case involved an action for indemnity or contribution between two insurance companies insuring a voluntary firefighter, who was in an accident in his personal vehicle on his way home from a cancelled emergency call. *Id.* at 528. Farm Bureau Town & Country Insurance Co. (Farm Bureau) issued a policy covering the firefighter's personal vehicle, with a limit of $500,000 and a personal/farm umbrella policy with a limit of $1,000,000. *Id.* American Alternative Insurance Corporation (AAIC) issued a commercial automobile policy to the Fire District with a $1,000,000 limit. *Id.* The western district of this Court determined both insurers were responsible for *pro rata* shares of the liability over the firefighter's underlying personal automobile policy. *Id.* at 532.[9] Because both Farm Bureau's umbrella policy and AAIC's policy had the same limits of $1,000,000, the Court determined each was

equally responsible for $133,316.22, half of the total $266,632.43 settlement. *Id.* at 533.

In reaching this decision, however, the Court in *Farm Bureau* rejected AAIC's argument that its policy limit of $1,000,000 was not available to prorate fifty-fifty because "section 537.610.2 limits the liability of the Fire District to $300,000 'for any one person in a single accident or occurrence' for negligent operation of a motor vehicle[.]" *Id.* at 532; *see* § 537.600.1(1) (motor vehicle exception first of two absolute exceptions to sovereign immunity). The western district of this Court instead agreed with Farm Bureau, which argued that "because the Fire District purchased liability coverage to $1,000,000, it waived the limits of liability imposed by section 537.610.2." *Farm Bureau*, 347 S.W.3d at 533. Although AAIC's policy involved only the motor vehicle exception to sovereign immunity, the Court relied on the insurance exception for other torts under § 537.610.1, *Kunzie* and another case involving insurance for retaliatory discharge, *Hummel*, 114 S.W.3d at 282, in concluding that "the Fire District waived sovereign immunity to the limits of the AAIC policy." *Farm Bureau*, 347 S.W.3d at 533.

As a contribution case, *Farm Bureau* is distinguishable from the case at bar because: (1) the issues were analyzed in terms of policy language interpretation

8. The insurance exception to sovereign immunity in § 537.610.1 permits a plaintiff to bring an action against a public entity for a tort other than those specified under § 537.600.1, provided the public entity purchased liability insurance to cover such a tort. By doing so, a public entity voluntarily subjects itself to a lawsuit "within the limitations described in the statutes." *Brennan*, 942 S.W.2d at 437; *see Parish v. Novus Equities Co.*, 231 S.W.3d 236, 246 (Mo. App. 2007) (a plaintiff bears the burden of demonstrating the existence of the insurance and that it covered the particular claim); *see also State ex rel. Board of Trustees of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992)

(a public entity does not waive its sovereign immunity by maintaining an insurance policy when that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity).

9. *Pro rata* contribution involves a division of the loss between insurers in proportion to the amount of coverage provided by their respective policies. *Heartland Payment Sys., L.L.C. v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 231 (Mo. App. 2006). "A pro-rata allocation among insurers is just that—an allocation among the various insurers." *Id.* at 232.

with little analysis of the sovereign immunity issue; and (2) the amount AAIC ultimately was required to pay was well within the statutory limit of $300,000 for any one person in a single accident as required by § 537.610.2. More importantly, Appellants' broad reading of *Farm Bureau* to permit the recovery of insurance policy proceeds in an amount greater than the limits set forth in § 537.610.2 is in conflict with binding precedent from our Supreme Court and other Missouri appellate opinions enforcing these statutory caps. *See Teeter v. Missouri Highway & Transp. Comm'n*, 891 S.W.2d 817, 821 (Mo. banc 1995) (holding that, because MHTC's damages exceeded the statutory cap under § 537.610, the trial court should have entered judgment against MHTC in the amount of the cap); *Richardson*, 863 S.W.2d at 880 (upholding single statutory cap against MHTC for all claims arising from injury to one person in an accident); *Wollard v. City of Kansas City*, 831 S.W.2d 200, 206 (Mo. banc 1992) (upholding a single statutory cap for slip and fall injuries on city property); *see also Schumann v. Missouri Highway & Transp. Comm'n*, 912 S.W.2d 548, 552 (Mo. App. W.D. 1995) (upholding a single statutory cap for personal injuries caused by dangerous condition on a road); *Dorlon v. City of Springfield*, 843 S.W.2d 934, 941 (Mo. App. S.D. 1992) (enforcing a single statutory cap for slip and fall injuries on city property); *Jones v. St. Louis Hous. Auth.*, 726 S.W.2d 766, 778-79 (Mo. App. E.D. 1987) (upholding a single statutory cap in wrongful death case involving dangerous condition of property).

In sum, as this case involves only the dangerous property exception to sovereign immunity pursuant to § 537.600.1(2), the statutory caps stated in § 537.610.2 apply. *See Richardson*, 863 S.W.2d at 880. Accordingly, the trial court did not err by reducing the judgment against MHTC to the adjusted, single statutory cap of $409,123. Point 1 is denied.

### Point 2

■ Appellants' second point contends the trial court erred by deciding that Appellants were required to share a single cap of $409,123. Appellants argue that all six Appellants "were entitled to an apportioned share of $409,123 each for a total judgment of $2,454,738" as "multiple claimants" under § 537.610.4. According to Appellants, § 537.610.4 applies because "the amount awarded to the multiple claimants exceeded $2,000,000 and [Appellants] requested apportionment under subsection 4." We disagree. As explained below, this wrongful death action involves the death of one person in a single accident, which limits Appellants to the recovery of a single cap.

Appellants' action against MHTC was based on Missouri's wrongful death statute. *See* § 537.080 RSMo (2000). As the "spouse . . . children . . . father and mother of the deceased," Appellants are members of the first class of statutory beneficiaries who are entitled to bring an action for damages. § 537.080.1(1). However, "[o]nly one action may be brought under this section against any one defendant for the death of any one person." § 537.080.2; *see State ex rel. Griffin v. Belt*, 941 S.W.2d 570, 572 (Mo. App. 1997).

As noted above, "[t]he liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed two million dollars for all claims arising out of a single accident or occurrence *and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence . . . .*" § 537.610.2 (emphasis added). In *Richardson*, 863 S.W.2d at 880, our Supreme Court decided that one statutory cap for sovereign immunity applied to "all the

claims, direct and derivative, arising from injuries to a single person physically present *in* the accident." *Id.* (emphasis added). *Richardson* involved one person, Jennifer Richardson, injured in an automobile accident. She brought a personal injury claim against MHTC, and her husband, Greg Richardson (who was not involved in the accident), brought a claim for loss of consortium. *Id.* at 879. At the time, § 537.610.2 RSMo (1986) specified the cap of $100,000 "for any one person in a single accident...." *Id.* The *Richardson* court specifically focused on the meaning of the word "in" to explain why only one cap applied:

> The Richardsons suggest this Court interpret the "any one person" language to include Greg Richardson separate from Jennifer, so each may recover up to $100,000. The Richardsons, however, ignore the modifier "in a single accident." The whole phrase "any one person in a single accident" connects the claim to the accident by the use of the preposition "in." The logical meaning of "in" is "present." This phrase indicates that the statute limits to $100,000 all the claims, direct and derivative, arising from injuries to a single person physically present in the accident. One $100,000 cap applies to each person and all those deriving claims from this one person *in* the accident.

*Richardson*, 863 S.W.2d at 880 (emphasis in original); *see also Jones*, 726 S.W.2d at 775 (Section 537.610 speaks in terms of "persons and accidents, not in the number of claims where only one person was injured"; legislature did not intend "principles of contribution, indemnity or comparative fault to be applied to expand the single person limitation ... beyond the limit of $100,000").[10]

Here, only Holesapple was "in" the accident, within the meaning of § 537.610.2, because only he was physically present in the collision. Therefore, Appellants are entitled to recover a single statutory cap of $300,000, adjusted to $409,123, for Holesapple's wrongful death. *See* §§ 537.610.2, 537.610.5; *Richardson*, 863 S.W.2d at 880; *see, e.g.*, *Teeter*, 891 S.W.2d at 821 (limiting recovery to one statutory cap, then $100,000, for damages arising from a wrongful death of a child brought by the mother and father, apportioning the single $100,000 cap between them); *see also Jones*, 726 S.W.2d at 779 (limiting recovery to single cap in wrongful death action when "[o]nly one accident or occurrence damaged one person").[11] Because the trial

---

10. In *Richardson*, our Supreme Court explained that, to the extent § 537.610.2 is ambiguous, "the alternative interpretation would multiply the sovereign's liability by the number of claimants—derivative and direct—each entitled to the full $100,000 cap (assuming the total claims are under $1 million)." *Richardson*, 863 S.W.2d at 880. The Court held that "[t]his interpretation violates the maxim that statutory provisions waiving sovereign immunity must be strictly construed. This maxim implements the goals of limiting the government's financial exposure while granting victims some compensation." *Id.* (citations omitted).

11. Lastly, we reject Appellants' argument that subsection 4 of § 537.610 applies. Section

537.610.4 reduces multiple, separate claims proportionately, if total claims exceed $2,000,000 in order to stay within that limit. *Id.*; *see Richardson*, 863 S.W.2d at 880; *McConnell v. St. Louis Cty.*, 655 S.W.2d 654, 658 (Mo. App. 1983). This subsection of the statute specifically provides in full:

> If the amount awarded to or settled upon multiple claimants exceeds two million dollars, any party may apply to any circuit court to apportion to each claimant his proper share of the total amount limited by subsection 1 of this section. The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to him bears to the aggregate awards and settlements for all claims arising out of the accident or occurrence,

court did not err in determining that Appellants were entitled to recover the single statutory cap of $409,123 and apportioning only that amount, Point 2 is denied.

The judgment of the trial court is affirmed.

DON E. BURRELL, J.—CONCUR

MARY W. SHEFFIELD, C.J.—CONCUR

---

*but the share shall not exceed three hundred thousand dollars.*
§ 537.610.4 (emphasis added). In this case, as a wrongful death claim with one statutory recovery cap of $409,123, subsection 4 of 537.610 has no application here. In addition, the last sentence of subsection 4 limits recovery to no more than $300,000, the single statutory cap, which is exactly what happened in this case. Further, just because Appellants requested apportionment under subsection 4, "such an apportionment proceeding [could not] increase the liability of the public entity beyond the limit statutorily established." *McConnell*, 655 S.W.2d at 658.